[Civil No. 2604.   Filed November 21, 1927.]

[260 Pac. 1096.]

LOUIS J. BOHN, Appellant, v. B. F. HILL, Appellee.

Messrs. Sloan, Holton, McKesson & Scott, for Appellant.

Mr. J. L. B. Alexander and Mr. Robert McMurchic, for Appellee.

ROSS, C. J.—This is an action by appellee, Hill, to recover from appellant, Bohn, a balance on a year's rent of appellee's farm, situate in Maricopa county. The farm consists of eighty acres, more or less, and the yearly rental agreed upon was $6,720, beginning February 2d, 1920, and ending February 1, 1921. Three thousand dollars of such rent was paid in March, 1920, as agreed, and the balance of $3,720 it was agreed should be secured by a lien on the cotton crop to be grown on premises, and paid out of the first receipts from sales of cotton, but not later than November 1st, 1920. Under the lease there went with the premises six head of horses and harness, one wagon, and all farming machinery and implements. The lessee (appellant) agreed to plant and cultivate said premises to long staple cotton only. The lease was of all of lessor's land, except two and one-half acres in the northeast corner thereof, which, with the buildings thereon, were reserved for the use of the lessor and his family and the keeping of three hundred chickens. He also reserved the right to use one team, harness, and wagon when desired, and the right to pasture on the premises one horse and one cow.

The terms of the lease were agreed upon on or before the second day of February, 1920, and on said date appellant went into the possession of premises. The written lease, however was not signed up by the parties until March 13th, 1920.

The appellant planted and grew long staple cotton on about seventy-eight acres, and harvested therefrom twenty-eight bales of lint. After the cotton was picked and baled, but before it was sold, to wit, on December 2d, 1921, appellee signed an agreement with appellant consenting to the latter's depositing the warehouse bale receipts with the National Bank of Arizona, of Phoenix, as security for loans made

by such bank to appellant, and in said agreement it was stipulated that:

"The first 20 cents per pound out of all such cotton is to be held by National Bank of Arizona to secure payment of notes given by L. J. Bohn to said bank. Of the balance a sufficient amount is to be held in custody by said bank for B. F. Hill to secure payment of balance of rent, $3,785.28."

The cotton was later sold by the bank, and, after deducting the amount it had loaned to Bohn, the insurance, and other expenses of sale, there was left a balance in bank to the credit of Bohn of $1,118.55, which on August 4th, 1922, was paid to Hill by check of Bohn, leaving a rent balance of $2,601.45. The purpose of this suit is to recover that sum and the sum of $41.49 for water plaintiff had paid for, but had not used, when the premises were turned over to appellant, and which the latter agreed to pay to appellee.

The complaint was filed on February 1st, 1926. Appellant in his answer says that appellee retained possession of 48 or more acres of the premises up to April 15th, 1920, and kept thereon at least 150 hogs and 30 head of cattle, and during said time deprived him of the full use, occupancy, and enjoyment of the premises by permitting said livestock to roam over and forage and pasture upon 48 acres; that appellee refused to permit him to plow or prepare said land, ordering and directing him to leave same, in order that the said livestock might feed and pasture upon the growing crops, and refused, although requested by appellant so to do, to remove said livestock from the premises until April 15th, 1920.

These same facts are alleged in a cross-complaint as a counterclaim, and, in addition thereto, it is averred that, when appellant was finally, on April 15th, given possession of the premises, the land was dry and difficult to plow, requiring a greater length

of time and a great deal more labor to plow it; that it broke in large lumps and clods because of its hard and dry condition, and because the livestock had roamed over it, wallowing upon and trampling the soil; that it was necessary to disc and drag the soil and replow it; that by reason of the delay it was necessary to reseed and replant; that a rank growth of weeds, Johnson grass, and other vegetation accumulated, causing additional work and expense; that more irrigation was necessary, all to his damage in the sum of $1,500; that, by reason of appellee's unlawful retention of premises, appellant was prevented from completing his planting until about June 1st, and, because of the lateness of such planting, the crop did not mature prior to frost; that, by reason of the trespass of livestock, the crop was much less than it would have been had appellant been given the exclusive use, occupancy, and enjoyment of the premises, and that he was thereby damaged in the sum of $3,500.

The appellee replied to the answer, denying the allegations therein, and setting up the settlement as made on December 2d, 1921, carried out on August 4th, 1922, and his waiver of his landlord's lien on cotton in order to permit appellant to pledge it to secure a loan, and asserted that, by reason thereof, appellant was estopped from making any defense to the action.

Upon the issues thus formed, a trial before a jury proceeded, and, after the close of all of the evidence, the court directed a verdict for the appellee.

Appellant assigns several errors, but the one that excepts to the instructed verdict is far-reaching enough to raise practically every question involved in his assignments, and a consideration of it will, we think, dispose of the case and all the points made in this appeal.

The evidence of appellant offered in support of his defense and counterclaim shows that appellee did pasture his cattle and hogs on the premises, but that it was done with the acquiescence or passive consent of appellant, and that the latter acceded to appellee that privilege without any serious objection or protest. This was the situation from the second day of February, 1920, up until or on or about April 12th, when appellant told appellee his hogs (all cattle had some time before been removed) would have to be penned or taken off the premises. Appellant on that date turned irrigation water on the land, and appellee took the hogs off the premises. This evidence, we think, shows appellee's use of the premises for pasturage was permissive, and was not at the time regarded as wrongful or a breach of the terms of the lease. This construction of the evidence is borne out by a written acknowledgment signed by appellant on March 13th, and indorsed on the lease (of the same date) in these words:

"I hereby acknowledge that I have been in possession of the above-described leased premises and of the personal property hereinabove referred to since February 2d, 1920."

"[Signed] LOUIS J. BOHN."

The acts of eviction and trespass appellant now makes the basis of his claim for damages began on the day he took possession, and continued to the date of signing lease and the above acknowledgment of possession, and evidently were not then thought to be wrongful or damaging. Not only that, but nearly two years after the expiration of his lease and the surrender of premises, to wit, on August 4th, 1922, appellant paid appellee on account of rent $1,118.55, having theretofore, on December 2d, 1921, in writing admitted he owed a balance of rent in the sum of $3,785.28.

It is now all too apparent that the rent agreed to be paid was outrageously excessive, and that the lessor and lessee were dealing on the basis of the $1.25 cotton of the preceding year. That the defense now interposed was an afterthought and made to offset or reduce such excess is all but absolutely certain. We think, if appellant's possession of the premises was disturbed or interfered with by appellee's use of them for pasturage without his consent and permission, he should have asserted it on March 13th, 1920, when he admits exclusive possession in himself up to that date. And, if not then, some time before he secured the appellee's consent to waive his statutory lien upon the cotton that he might pledge it as security for a loan made to him by the bank. He certainly believed he had not been damaged by appellee's alleged wrongful conduct when he signed the lease on March 13th, and, if he had been, we think he should be estopped by his admission in writing from claiming damages, or by such act be held to have waived damages, if any had been suffered.

We think the acts and conduct of the parties on December 2d, 1921, should be given the same effect. On and prior to that date appellee, both under the terms of the lease and of the statute, had a lien on all the cotton grown on his premises for the rent agreed to be paid, and on that date he joined appellant in a writing, the effect of which was to waive his lien to the amount of 20 cents per pound on all such cotton in order that appellant might pledge it as security for a loan. In such writing appellant admitted he owed all the rent agreed in lease to be paid, and authorized and directed the bank to first pay appellant's notes from the proceeds of sales of cotton, and to hold any balance for application on the rental of the premises; and later, on August 4th, 1922, drew his check to appellee on the bank for

such balance, amounting, as above stated, to $1,118.55.

Such amicable and agreeable dealings with appellee, long after the alleged wrongs are said to have been committed, without any word of protest or complaint, are not in accord with human experience or observation. Had he asserted his claim for damages before he obtained a waiver by appellee of his landlord's lien, it might be argued that the latter's position had not been changed for the worse, but such assertions cannot now be made. The cotton was amply sufficient to pay all back rent, but, after the appellant's notes were paid to the bank, there was left for credit on rent only $1,118.55. It is hardly to be presumed the appellee would have released from his lien so large a portion of the cotton to accommodate appellant had the latter at the time or before made claim to a right of offset against the rent. Appellee, rather, would have preferred to hold all his security if it was to be contested in court. Clearly, all the elements necessary to constitute an estoppel by conduct are present in this case.

"To constitute an estoppel *in pais* three things must occur: First, an admission, statement, or act inconsistent to the claim afterwards appealed and sued on; second, action by the other party on the faith of such admission, statement, or act; third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act." This is appellant's definition of estoppel, and we think it fairly accurate.

Appellant's present claim is entirely inconsistent with his attitude while appellee's stock was pasturing on the premises and at all times afterwards until suit was instituted in February, 1926—almost five years after the expiration of lease. It is also clear that appellee, relying upon appellant's tacit and

avowed admissions of satisfaction with appellee's conduct in connection with lease and premises, waived his landlord's lien on cotton in favor of appellant, and to that extent would be injured, if appellant were now permitted to contradict or repudiate his written admissions and statements theretofore made. Appellant's present claim is not compatible with his conduct throughout. By no act or statement at any time did he indicate to appellee that he was injured or damaged by any breach of the lease until long after its expiration, but, on the contrary, dealt with the appellee as if entirely satisfied.

We are satisfied from the record that the court properly directed the verdict, and that no prejudicial error was committed.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.