[Civil No. 3790. Filed May 24, 1937.]

[68 Pac. (2d) 69.]

VALLEY PRODUCTS, INC., a Corporation, Appellant, v. M. B. KUBELSKY, ROY FANSLER, and WESTERN COTTON PRODUCTS COMPANY, a Corporation, Appellees.

Mr. William C. Fields, for Appellant.

Mr. D. P. Skousen and Mr. Andrew T. Hagen, for Appellee M. B. Kubelsky.

LOCKWOOD, J.—This is an appeal from a judgment rendered in favor of M. B. Kubelsky, hereinafter called plaintiff, against Western Cotton Products Company, a corporation, hereinafter called garnishee, and Valley Products, Inc., a corporation, hereinafter called intervenor. The facts necessary for a determination of the appeal may be stated as follows.

On January 29, 1931, Roy Fansler executed his promissory note in favor of plaintiff, in the amount of $800, due October 31st the same year. The note not having been paid, a suit was brought thereafter against Fansler on May 9, 1934, in the superior court of Maricopa county, and judgment was rendered thereon May 3, 1935, nearly a year later. On February 4, 1936, plaintiff caused a writ of garnishment to be issued against the garnishee. It answered, showing that it held forty-three bales of cotton to the joint account of intervenor and Fansler. The answer further stated that the cotton was held by it as security for the payment of an indebtedness of some $1,252 owed it by Fansler under the terms of a crop mortgage, which provided that the cotton could be sold by the garnishee, and the proceeds applied on the payment of a note which had been given by Fansler to it. Some twelve days later a supplemental answer to the writ was filed, stating that since filing the original answer garnishee had sold the cotton under the terms of the mortgage, and, after retaining from the proceeds sufficient to pay the balance due, there remained in its hands the sum of $1,106.29, to the joint account of the intervenor and Fansler. On March 21, 1936, Valley Products, Inc., filed a motion for leave to intervene in the proceeding, alleging that the cotton in the hands of the garnishee was grown on its land,

which had been rented to Fansler under a cropper's contract, and that Fansler had no equity in the proceeds thereof, because he had already received more than his share from the proceeds of the crop. Issue was joined by plaintiff in his answer to the complaint in intervention, in which he claimed that Fansler grew the cotton in question under a certain recorded lease from the intervenor, which provided for a cash rental which had been paid.

A trial on these issues was had before the court sitting without a jury. Plaintiff, in order to prove his case, introduced in evidence a certain recorded lease dated April 15, 1935, between Fansler and the intervenor, which lease, in substance, provided for a cash rental to be paid in a certain manner, and showed an assignment thereof by intervenor to J. G. Boswell Farm Loan Company, a corporation. Thereupon plaintiff rested. Intervenor then called Fansler, who was asked whether he had actually farmed the land which grew the cotton involved in this action, under the recorded lease offered in evidence by plaintiff. He stated that he had not, but that it was farmed under another written lease which had been executed in 1934 and renewed in 1935. Objection was made by plaintiff to the introduction in evidence of the lease for 1934, on the ground that it had never been recorded, and the court sustained the objection. The intervenor offered then to prove that the recorded lease offered in evidence by the plaintiff had never been put into operation, having been terminated by mutual consent of the parties thereto, and that the assignment was not, in truth and fact, an assignment of the lease, but merely a waiver made for the purpose of a loan. It further offered to prove that Fansler had drawn much more than half the proceeds of the crop made on the land, so that he was not entitled to any of the proceeds of the sale of the forty-three bales of cotton left after

the mortgage had been satisfied. The court sustained an objection to any offer of testimony of this nature, stating:

"The court sustains the objection to the testimony, it being the view of the Court that the solemn written agreement of the parties recorded as evidence to the world as stating the true relation between the parties is binding upon them. This attachment creditor had the right to rely upon it, and certainly incurred expense in relying upon it, and that you may not now be heard to say that you didn't act upon it but acted under some former contract."

Judgment was thereafter rendered in favor of plaintiff, and against the garnishee, for the sum which it admitted that it had in its hands, and that the intervenor had no interest therein. A motion for new trial was duly made and the court denied it in the following language:

"The motion for a new trial filed by the intervenor in the above-entitled cause is hereby denied, for the reason that the contract of lease offered in evidence by the intervenor, dated the 17th day of February, 1934, creates the relation of landlord and tenant between the Valley Products, Inc., a corporation, and the defendant, Fansler, and for the purpose of this motion the court has ordered the case reopened for the purpose of admitting contract of lease in evidence, and it has been received in evidence as intervenor's exhibit 1.

"Under the contract of lease, intervenor's exhibit 1, which, as hereinabove stated, created the relation of landlord and tenant between the parties, Fansler as lessee was the absolute owner of the crops grown upon said premises until such time as they had been divided. The evidence in this case conclusively shows that the crops were never divided, but were sold by the garnishee, the Western Cotton Products Company, a corporation, and in its answer of garnishment it alleged that it held the proceeds of the sale of said cotton for the benefit of the defendant, Fansler, and the intervenor, Valley Products Inc., a corporation.

"Assuming that the parties were acting under the new agreement, which is of record and was read into the record as a part of plaintiff's case, The Valley Products Company had no interest whatever in such lease, having theretofore assigned the same to the J. G. Boswell Farm Loan Company, and under no stretch of the imagination was the intervenor entitled to anything under the terms of that contract.

"The court is of the opinion that it probably should have admitted in evidence the original lease at the time of the trial, but the failure to do so, under the only interpretation which can be placed upon said contract the attachment lien was superior to any right of the intervenor in and to said fund."

Thereafter this appeal was taken.

It is very evident from the foregoing facts that the trial court at first was of the opinion that the intervenor could not be permitted to show that the recorded lease above referred to was not the one under which the cotton had been produced, for the reason that the plaintiff was an innocent third party, so far as the proceeds of the cotton were concerned, and therefore entitled to rely upon the recorded lease as showing that the intervenor had no interest whatever in the cotton. Later on, apparently, the court was in doubt as to the correctness of its position, and, after judgment had been rendered and a motion for new trial had been filed, and without sustaining the motion for new trial, it ordered the case reopened for the purpose of admitting the 1934 lease in evidence. It then considered the effect, if any, of the 1934 lease, and held, in substance, that it made no difference under which lease the land was farmed and the cotton grown, on the theory that, if it was grown under the 1935 lease, intervenor had been paid its full cash rent and assigned its interest in the lease to the Boswell Farm Loan Company, while, if it was farmed under the 1934 lease, since the relation of landlord and tenant

506

existed between Fansler and intervenor, Fansler had
full title to the entire crop until it had been divided,
and, since it was never divided but sold by the Western
Cotton Products Co., under the provisions of its mort-
gage, the proceeds of the sale were the sole property
of Fansler and subject to garnishment for his debts.
■■ Let us consider whether the trial court was
correct in its holding as to the law. It is, of course,
true that, if the cotton was actually raised under the
1935 lease, which had been assigned by the intervenor
to the Boswell Farm Loan Company, the intervenor
would have had no rights in the proceeds of the cotton.
It claimed, however, that this lease was abandoned by
mutual consent of the parties thereto and had never
been put into effect, being made solely for the purpose
of acting as a waiver so that a crop loan could be
obtained on the cotton to be grown. The court refused
to admit any evidence of this nature, on the theory
that, since the 1935 lease was recorded, intervenor
and Fansler were estopped from asserting as against
a third party that it was not in effect. It is, of course,
true that the public records are notice to all the world
of the contents of any document which is entitled to
record and properly recorded therein. Section 972,
Rev. Code 1928. But the effect of such knowledge is
an entirely different thing. We think that the ordi-
nary rules in regard to estoppel apply to this kind
of a situation in the same manner as to any other. In
the case of *Bohn* v. *Hill,* 32 Ariz. 545, 260 Pac. 1096,
1098, we have stated the elements of estoppel in the
following language:

"To constitute an estoppel *in pais* three things must
occur: First, an admission, statement, or act incon-
sistent to the claim afterwards appealed and sued on;
second, action by the other party on the faith of such
admission, statement, or act; third, injury to such
other party, resulting from allowing the first party

to contradict or repudiate such admission, statement, or act.''

It will be seen there are three things necessary to create an estoppel: First, the admission, act, or statement inconsistent with the claim afterwards asserted. This, of course, appears in the present case, for the recorded lease for the year 1935 is obviously inconsistent with the claim that the land was really farmed under the unrecorded 1934 lease. The second element is some action by the other parties on the faith of such admission, statement, or act. Did plaintiff act on the faith of the 1935 lease? Certainly so far as the original indebtedness between Fansler and plaintiff is concerned, the lease in no way affected it, for it was incurred in the year 1931. Nor does it appear that it had anything to do with the suit and the judgment recovered by plaintiff against Fansler, for his suit was commenced in 1934 and judgment was recovered for the full amount. The only action which it could be claimed that plaintiff took, relying on the faith of the recorded lease, was that he caused a writ of garnishment to be issued after judgment, against the cotton in the hands of the garnishee, presumably on the theory that it belonged to Fansler. If plaintiff was in the position of an innocent purchaser, as the term is understood in law, so far as whatever right it would acquire by garnishing the debtor of Fansler, there would be much merit in the suggestion. Does it come within this category? We have had this precise question before us in the case of *Ellery* v. *Cumming,* 40 Ariz. 512, 14 Pac. (2d) 709, 710 (83 A. L. R. 1081), wherein we said:

''Attachment and garnishment are in many respects very similar in their nature, and the ordinary rule is that an attaching or garnishing creditor can gain no greater right over the property or interest of the judgment debtor so attached and garnished than the

debtor himself has therein. 28 C. J. 241, 242 and notes.''

This general statement of the law is fully sustained by the authorities. We think, therefore, that, when the plaintiff garnished the property in the hands of the garnishee, he was not an innocent purchaser, but that he merely stepped into the shoes of his debtor Fansler, and obtained no more rights against the cotton by reason of the garnishment than Fansler had. It is clear that, so far as the equities between Fansler and intervenor are concerned the recorded lease in no sense was an estoppel, but either party was at liberty to show, in the proper manner, the true nature of the terms under which the property was farmed. We must, for the purpose of this appeal, assume that the intervenor could have made good its offer to prove that the property was farmed under the 1934 lease, and, if that be true, the court could not render judgment on the basis of the 1935 lease. Let us then consider the second ground upon which the court based its action, and determine whether or not, by the terms of the 1934 lease, the title to the cotton in question lay solely in Fansler, or whether, as intervenor asserts, they were tenants in common of the crop until it was actually divided, for, if the latter be true, the plaintiff would acquire only the interest of the tenant in common who was his debtor, whether that interest was small or large. *Sims* v. *Jones*, 54 Neb. 769, 75 N. W. 150, 69 Am. St. Rep. 749.

The theory of the trial court evidently was that the so-called 1934 lease was a lease in the ordinary sense of the word, creating the relation of landlord and tenant and not a cropper's contract, and that if such were the fact the title to the crop produced was in the lessee, the lessor having no legal interest therein.

This is the general rule as to leases. *Imperial*

*Valley Co.* v. *Globe etc. Co.,* 187 Cal. 352, 202 Pac. 129; *Eaves* v. *Sheppard,* 17 Idaho 268, 105 Pac. 407, 134 Am. St. Rep. 256; *Wyandt* v. *Merrill,* 108 Kan. 204, 194 Pac. 634, 15 A. L. R. 654; *Riddle* v. *Dow,* 98 Iowa 7, 66 N. W. 1066, 32 L. R. A. 811. The rule, however, is subject to the exception that, if there be a special agreement to the contrary, it is the terms of that agreement which must prevail, for, by contract, the landlord and tenant may vest the title in one or the other or both, as co-owners, tenants in common, partners, or in any mode or provision at the will of the parties. *Summerville* v. *Stockton M. Co.,* 142 Cal. 529, 76 Pac. 243; *Hudson* v. *Glens Falls Ins. Co.,* 218 N. Y. 133, 112 N. E. 728, L. R. A. 1917A 482; *Dobbs* v. *Atlas Elevator Co.,* 25 S. D. 177, 126 N. W. 250. As was said in *Consolidated Land etc. Co.* v. *Hawley,* 7 S. D. 229, 63 N. W. 904, 905:

"As already intimated, it is not important to name this instrument a 'lease' or simply a 'contract,' or these parties 'landlord and tenant,' or 'owner and cropper.' If there were no stipulations in the instrument by which their respective rights were fixed, then the law would have to determine the same, and, as a means thereto, would define their relations to each other; but the parties themselves have done this, by an agreement so unequivocal in its intent and meaning that it must control, unless it was such an agreement as the parties, under the circumstances, were not allowed to make. No reason is suggested in argument, and none occurs to us, which would forbid such stipulation. Contracts or leases very similar in terms to this have often been construed as above indicated. [Citing cases.] See 4 Am. & Eng. Enc. Law, p. 895, note, where numerous authorities are cited to the proposition that: 'There is no doubt that where one man farms land of another under an agreement by which he is to give the owner a part of the crop raised, for its use, he and the owner, in the absence of a stipulation providing otherwise, become tenants in common

of the crops raised. But it is just as clear that the agreement between the parties may be so framed as to secure to the owner of the land the ownership of the product until the performance of a certain stated condition.' ''

 Let us then examine the terms of the lease to see within which rule it falls. The lease, after describing the parties and the land, says:

"It is expressly agreed as follows: 1. The lessee will thoroughly plow all of said land, plant it to short staple cotton, and farm the land in a first class workmanlike manner to produce the highest yield and best crop thereon, and will give all reasonable irrigation, cultivation and other care to the crop. . . .

"2. Upon compliance with the foregoing, Lessee shall be entitled to keep and retain one-half (½) of the crop so produced.

"3. The actual cost of picking and ginning shall be paid for by lessor and lessee, each paying one-half. . . .

"4. The lessor agrees to pay out of his half of said cotton crop two-thirds (⅔) of the cost of irrigating water and the lessee agrees to pay the other one-third, out of his half of the cotton crop. . . .

"6. As the cotton is ginned it shall be divided so that lessor and lessee shall each receive the same weight and the same quality of cotton.

"7. It is understood that it will be necessary for lessee to borrow money for the purpose of financing a part of raising of the crop. Lessor agrees to execute the necessary waiver up to but not exceeding Twenty-three Dollars ($23.00) per acre. It being agreed that Twelve Dollars ($12.00) shall be advanced to the lessee same ,to be finally paid out of his half of the cotton crop. The remainder to be used for buying water, two-thirds of which shall be paid out of lessor's half of cotton crop and one-third (⅓) out of lessee's half of cotton crop.

"8. It is further expressly understood that the lessee shall have the right to sell his half of the cotton at such time as he pleases but that he shall have nor right

to sell or make any disposition of any of lessor's half of the cotton.''

On examining and comparing these provisions, we think there can be no reasonable doubt that it was understood and expressly agreed between the parties that each party owned one-half of the crop, and that, while the lessee might sell his half of the cotton at such time as he pleased, he could have no right to sell nor make any disposition of lessor's half without the consent of the lessor. The very fact that in section 7 it was agreed, in order that lessee might borrow money to finance the cost of raising the crop, the lessor would execute the necessary waiver, shows conclusively that it was understood the title to half of the crop was in it. Had this not been true, no waiver of rights would have been necessary, for the lessee, having the title to the entire crop, under our law could have mortgaged it at pleasure. The trial court apparently considered section 6, which provides for a division of the cotton after it was ginned, as indicating that the title remained in the lessee. We think, on the contrary, that the only reasonable meaning which can be given this section, when considered with all the other provisions of the lease, is that the lessor and lessee each owned an undivided one-half of the cotton until such division and were, therefore, tenants in common thereof. As we have said, if one attempts to attach or garnishee the interest of a tenant in common of certain property, he is entitled only to so much of the property so held as belonged to his judgment debtor. Such being the case, it was the duty of the trial court to permit intervener to offer evidence on the question of whether the 1934 or 1935 lease was the one under which the cotton was actually grown, and also evidence of what interest, if any, Fansler had in that portion of the cotton which was in the hands of the garnishee at the time of the garnishment.

The judgment of the superior court is reversed, and the case remanded, with instructions to grant a new trial on the principles set forth herein.

McALISTER, C. J., and ROSS, J., concur.