[Civil No. 4473. Filed November 16, 1942.]

[131 Pac. (2d) 413.]

# FARMERS MUTUAL MANUFACTURING AND GINNING COMPANY, a Corporation, Appellant, v. W. A. THOMPSON, Appellee.

Messrs. Beer & Christy, for Appellant.

Mr. Tom Fulbright, for Appellee.

LOCKWOOD, C. J.—W. A. Thompson, plaintiff, brought an action in conversion against Farmers Mu-

tual Manufacturing and Ginning Company, defendant, and recovered judgment therein, whereupon this appeal was taken.

The facts material to a determination of the case, with one exception, are not in serious dispute, and may be stated as follows: In December, 1939, plaintiff's wife had certain state lands in Pinal county leased from the state land department. The lease was about to expire, and she assigned to one Edwards the remaining term of the lease, with the consent of the state land department. The written assignment recited a consideration of "Ten Dollars and other valuable considerations." Edwards thereupon applied to the state and received a lease to the land from December 13, 1939, to December 12, 1944. It was orally agreed between Edwards and the Thompsons that as part of the consideration for the assignment of lease above set forth plaintiff was to receive all rents derived by Edwards from the leasing of said premises during the crop year of 1940–41. On March 18, 1940, Edwards leased the premises to one J. A. Wellman, the material parts of which lease read as follows:

" . . . First party reserves right to reasonable use of pumping equipment for purpose only of watering said reserved 20 acres at first party's expense. The said second party agrees with the first party that he will diligently plant and cultivate, in a good farm-manlike manner, harvest and deliver to the gin not less than 80 acres of long staple cotton. This lease shall be void if the said second party does not secure approval of a crop finance loan on or before March 25, 1940.

"TO HAVE AND TO HOLD the same to the said party of the second part, from the 1st day of February, 1940, to the 1st day of February, 1941.

"And said party of the second part, in consideration of the leasing the premises as above set forth, covenants and agrees with the part—of the first part to pay the said party of the first part, as rent for the

same, the sum of 1/5 of all seed cotton delivered at gin and 1/4 of all feed grown delivered as harvested at the premises. All of said crop rents to be delivered to W. A. Thompson of Coolidge, Arizona, said delivery, it is mutually agreed, is a part of the consideration of this lease.

" . . . that upon the non-payment of the whole or any portion of the said rent at the time when the same is above promised to be paid, the said party of the first part may, at his election, either restrain for said rent due, or declare this lease at an end, and recover possession as if the same was held by forcible detainer; . . ."

In pursuance of one of the conditions of the lease, Wellman attempted to make arrangements with defendant for financing the cotton crop referred to in the lease. Defendant's manager, having seen a copy of the lease, went to Edwards and required of him, as condition to making the loan asked for by Wellman, that Edwards should subordinate any interest which he claimed to the crop to be grown, to a chattel mortgage thereon given by Wellman to defendant for the purpose of securing the loan. This Edwards gave, in the following language:

"WAIVER

"In consideration of FARMERS MUTUAL MFG. & GINNING CO. accepting the foregoing mortgage and the note, cotton, cottonseed, and ginning contract therein mentioned and thereby secured to the Mortgagee named in said mortgage, each of the undersigned does hereby consent to and approve of all the terms and conditions of said mortgage, note, cotton, cottonseed, and ginning contract and authorize said Mortgagee to execute the same, and each does further agree that all his, her, or its right, title or interest, lien or claim of every kind and nature in, on, or to the crops and chattels mentioned in and mortgaged by the terms of said mortgage shall at all times be and remain subject and inferior to the rights, interests, claims and liens of every kind of FARMERS MUTUAL MFG. & GINNING CO., its successors and assigns, as fixed in and

by the terms of said mortgage, note, cotton, cottonseed, and ginning contract on, in, or to said crops and chattels.

"Dated this 3rd day of April, 1940."

Thereupon Wellman executed the usual crop mortgage to secure the advances to be made to him by defendant for the purpose of raising the cotton crop above referred to, and the same was duly recorded in Pinal county. The crop was grown, picked and delivered by Wellman to defendant for the purpose of ginning. It was sold by defendant, and the proceeds thereof applied to the loan, none of it being paid to either Edwards or plaintiff.

The evidence showed the value of the crop picked and delivered for ginning, and judgment was rendered in favor of plaintiff for one-fifth of that amount.

There is only one material point upon which there was sharp conflict in the evidence. Edwards testified that before any advances were made to Wellman, and before the chattel mortgage and waiver aforesaid were executed, he notified defendant's manager that Thompson was entitled to the rent set forth in the lease, and that any waiver to be effective would have to be signed not only by him, Edwards, but by Thompson. The manager denies this, but we must assume the trial court believed the testimony of Edwards on this point.

It is admitted by plaintiff that his claim is not based on a landlord's lien, but upon the theory that under the terms of the lease Edwards was an owner of one-fifth of the cotton produced under the lease, and that he had assigned his interest in such cotton to Thompson, to the knowledge of defendant, so that defendant was liable to plaintiff for converting such one-fifth of the cotton to its own use.

The vital question in the case is as to whether, under the terms of the lease, Edwards was the legal

owner of one-fifth of the cotton produced by Wellman, or whether the title thereto was in Wellman, until actual delivery to Edwards or his assignee Thompson. If the title was in Wellman, he was authorized to execute the chattel mortgage to defendant, and it would take precedence of any claim of Edwards or his assignee Thompson so far as defendant was concerned. If, on the other hand, Edwards was the owner of the one-fifth of the cotton from the time of the execution of the lease, then Wellman's chattel mortgage was not effective so far as the portion of the cotton owned by Edwards and assigned to Thompson was concerned, and if defendant had knowledge of Thompson's interest in the cotton, it would be liable for conversion. *Valley Products, Inc.* v. *Kubelsky,* 49 Ariz. 500, 68 Pac. (2d) 69. What, then, was Edwards' interest, if any, in the cotton itself at the time the lease was executed, for Thompson claiming by assignment from Edwards would take neither more nor less than Edwards had at the time the lease was made. In *Valley Products, Inc.* v. *Kubelsky, supra,* we had occasion to discuss the respective interests of a landlord and tenant in the crop produced. We held therein that under the ordinary lease the title to the product of the property leased was in the lessee, and that he could mortgage or dispose of it without the consent of the landlord. But we also stated that this rule was subject to the exception that if the parties had reached a different agreement as to the title of the product of the land, that agreement would prevail, and, in the particular case cited held the title was held by landlord and lessee as tenants in common until a division was made under the terms of the lease, and that one attempting to reach the interests of the tenant was entitled to only so much of the product as belonged to the latter. It would follow that if the title of part of the product were in the landlord, the tenant could not

dispose of such part by any act of his without the consent of the landlord.

■ The question has frequently arisen as to whether under a lease which provides that the rent shall be paid by a stated percentage of the product of the land, the presumption is that the title to all of the product is in the tenant until it is divided, or whether it is in both landlord and tenant as tenants in common. The decisions are not entirely in harmony, but we think the great majority of the modern cases hold the presumption is that the parties are tenants in common. *Woodsend* v. *Chatom,* 191 Cal. 72, 214 Pac. 965; *Devereaux Mortg. Co.* v. *Walker,* 46 Idaho 431, 268 Pac. 37; *Fuhrman* v. *Interior Warehouse Co.,* 64 Wash. 159, 116 Pac. 666, 37 L. R. A. (N. S.) 89.

■ Upon examining the lease in question, we think there is nothing tending to negative this presumption to be found therein, and we hold, therefore, that when the lease between Edwards and Wellman was executed, Edwards became tenant in common with Wellman in the product of the premises leased to the extent provided for in the lease, and that by his assignment to Thompson his right passed to the latter. If defendant had had no knowledge of Thompson's interest in the cotton Edwards' waiver above set forth would have postponed his interest, and, therefore, that of Thompson, to the chattel mortgage executed by Wellman, but since the evidence shows that defendant was notified by Edwards of the assignment, we think it took with actual notice of Thompson's right.

We have considered each and all of the assignments of error and the propositions of law raised thereby, but in view of what we have said as to the ownership of the one-fifth of the cotton reserved as rent, and defendant's knowledge of the assignment by Edwards to Thompson, we need not discuss them.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.