404 P.2d 100

**Sultan ALI and Laura Ali, husband and wife, Appellants,**

**v.**

**Bonnie B. SITTS and Jack Stofella; Emma O'Brien and Norma Folley, Appellees.***

**No. I CA–CIV II.**

Court of Appeals of Arizona.

June 30, 1965.

Rehearing Denied Sept. 2, 1965.

Review Denied Sept. 21, 1965.

---

1. Another official court reporter was present on January 16, 1964, and at all subsequent proceedings.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7455. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

**440**

Brandt & Baker, by Thadd Baker, Yuma, for appellants.

Benton & Case, by Williby E. Case, Jr., Yuma, for appellees.

STEVENS, Chief Judge.

This consolidated appeal relates to the claimed right to off-set an overpayment of rent under an oral lease arrangement against the fixed rental specified in a subsequent written lease. Mrs. Sitts and her son Mr. Stofella, owned approximately 80 acres of farm land in Yuma County. Adjoining this land is another approximately 80 acres of farm land which was owned by Mrs. O'Brien and Mrs. Folley. The ladies are sisters. The land was acquired by these parties by inheritance in the mid 1920's.

Sultan Ali is a farmer with a limited command of English. Mr. Ali farmed the combined approximately 160 acres beginning in the year 1932 and continuously through the year 1958. He remained in possession, farming this land in the early part of 1959 at which time the above named owners sold the property to a party not involved in this litigation. The evidence discloses that the initial 1932 landlord-tenant relationship was evidenced by a written lease and that there were then three successive three year leases. Thereafter Mr. Ali continued to farm the land on an oral arrangement similar to the written lease arrangements pursuant to which he was required to pay to the owners 1/3rd of the net proceeds of the crops grown upon the land. It is not necessary to recite the details of these arrangements. On the 28th day of December 1956, at the request of the owners of the two parcels, he signed two separate leases, the lease for the Sitts-Stofella land calling for annual payments of $3850 payable on December 1st, the first of said payments being due December 1, 1957. There was a like lease in relation to the O'Brien-Folley property except that the annual rent was $3800 a year. The rental was computed on the basis of $50 per acre. The leases were not complex documents and were silent as to any indebtedness due from the owners to Mr. Ali in relation to payments which Mr. Ali had made for the year 1956 and prior years.

On or about the 1st day of December 1957 when the first annual payment became

due under the leases, Mr. Ali paid $3000 to the owners of the Sitts-Stofella land and a like sum to the owners of the O'Brien-Folley land. There was some conversation at the time and from the record it is not clear that either party fully understood the other. On the 22nd day of December 1958, the owners of each of the parcels gave Mr. Ali notice of cancellation the notice specifying that the reason for such cancellation was the fact of arrearage in the payment of rent. Mr. Ali promptly consulted his attorney who prepared a letter for Mr. Ali's signature the letter claiming that there had been an overpayment under the oral lease arrangement. Mr. Ali delivered the letter to Mrs. O'Brien with whom Mr. Ali had most of his business relationships concerning both parcels and at the same time delivered two checks. The checks were in that sum which Mr. Ali had calculated to be the difference between the overpayment made on the oral arrangement and the sums specified in the written leases up to and including the sums due on December 1, 1958. There was little conversation at the time of the delivery of the letter and these checks. Mrs. O'Brien testified that this was the first that she had known that there had been an overpayment. The checks were cashed. Mr. Ali continued in possession of the land and occupied the same at the time of the sale of the land which took place shortly thereafter.

After the land had been sold and on the 11th day of May 1959, two separate actions were filed which are the subject of this appeal. The owners of each of the 80 acre parcels filed a separate suit for back rent being the difference between the two years of rent specified in the written lease and the money received from Mr. Ali in December 1957 and December 1958. In both actions Mr. Ali filed a counter-claim for overpayment and urged the right of off-set. The cases were consolidated for trial and were tried to the court without a jury. A timely request was made for findings of fact and conclusions of law.

It was agreed that if Mr. Ali was not entitled to a counter-claim or an off-set that then there should be a recovery in the sum prayed for in each of the two cases. As a result of the trial, the court did not allow an off-set, judgment was entered in each case as prayed for and Mr. Ali prosecuted this consolidated appeal.

In the findings of fact, the trial court found that during the year 1956 Mr. Ali had paid a total of $5,000, this figure having been corrected at the oral argument to the sum of $10,000 being $5,000 for each of the 80 acre parcels. The findings further established that the one-third entitlement for each parcel for the year 1956 was the sum of $2,423.43. The court further found that if an off-set was to be allowed the overpayment in 1956 on the O'Brien-Folley land would have been in the sum prayed for which would have left these parties exactly equal whereas there would have been an overpayment on the Sitts-Folley land in the sum of $8.99. The court found that these overpayments were voluntary payments. The trial court then announced the following conclusions of law:

## "CONCLUSIONS OF LAW

"That all payments made by the Defendants to the Plaintiffs under the oral sharecrop agreements were voluntary payments and a party cannot by direct action or by way of set-off or counterclaim recover money voluntarily paid with a full knowledge of all the facts and without any fraud, duress or extortion, although no obligation to make such payment existed.

### "II

"That the defendants by making said voluntary payments and then entering into the change of position brought about by the execution of the written lease on December 28, 1956, and thereby allowing the plaintiffs to change their position without any knowledge that a claim was made against them by the Defendants, are not estopped from

claiming that said voluntary payments were made under a mistake of fact.

"III

"That the Plaintiffs are entitled to recover upon their Complaint in the sum asked for against the Defendants.

"IV

"That the Plaintiffs are entitled to be dismissed upon the Counter-claim filed by the Defendants.

"Judgment to be entered by the Clerk forthwith upon the filing of these Findings & Conclusions.

"DATED this 15th day of May, 1961."

■ Where the evidence supports findings of fact we are bound thereby although we are not bound by the trial court's conclusion of law based upon those findings of fact. The evidence presented to the trial court was a recalculation of income and expenses beginning with the year 1953. Timely objections were made on the basis of the three year statute of limitations and also on the basis of immateriality as well as other well stated objections. In view of the fact that the case was tried to the court without a jury the court did not make specific rulings on these objections and was liberal in relation to his receipt of evidence. As a consequence we have the historical background both in the reporter's transcript of the evidence of the trial and in the depositions of Mrs. Sitts and Mrs. O'Brien which depositions were received in evidence, all of this testimony having been read by this Court.

The record fully reflects that in all of the years of dealings between the parties there was never a formal accounting. The basic accounting records were the records of the companies which financed Mr. Ali in connection with the growing and marketing of crops. Mrs. O'Brien testified that from time to time Mr. Ali would bring these statements to her and that she did not understand them. The method of making payments was generally along the following pattern, that is, Mr. Ali would come to Mrs. O'Brien's home with his check book and he would tell her to make out two checks, one for each of the two parcels, advising her as to the amount to be inserted in the check and when Mrs. O'Brien had completed the preparation of the checks, Mr. Ali would sign them. The record discloses that Mr. Ali would make payments at irregular intervals throughout the growing season, sometimes using borrowed money, the bulk of the payments being made before it was possible to determine each party's entitlement in relation to the particular crop then in question. During the year 1956 Mrs. Sitts and her husband, long time residents of Honolulu, were building a home in Honolulu. Mr. Ali testified that she needed some money in connection with this construction and the plaintiffs testified that there was no need for money and that they did not ask for any advances.

The record discloses that:

During the year 1953 Mr. Ali made payments in April and December totaling $9,-000 whereas $8,612.41 was actually due.

During the year 1954 Mr. Ali made payments on July 15th, November 1st and November 2nd totaling $6,146.50 whereas $6,131.95 was actually owing.

During the year 1955 Mr. Ali made payments in March, November and December totaling $5,000 whereas $3,499.55 was actually owing and that in 1956 he made a number of payments each in the sum of $1,000, these payments being made in March, April, September, November and December, totaling $10,000, whereas $4,846.-93 was actually owing. The above totals are total sums paid on both parcels and the total amount due on both parcels as generally the lands were treated equally notwithstanding a slight difference in acreage.

■ In November 1956 the landowners desired a fixed rental in place of a percentage rental so that they could count on a definite income, Mr. Ali agreed that $50 an acre for each year of the lease

would be a reasonable figure and he agreed to signing written leases. When he talked to the landowners neither party made mention of any overpayment or any accounting. The attorney for the landowners prepared the leases and as before stated, they were simple in terms and silent as to off-sets or any indebtedness due to Mr. Ali. Mr. Ali went to the office of the attorney and signed the leases, neither party asking any questions and neither party asking any statements relative to off-sets or overpayments or accountings.

The record discloses that during the entire period of the association between the parties beginning with the year 1932 and even at the time of the trial, a real friendship and mutual trust existed between the parties. Each took the word of the other. The record discloses that the plaintiffs admitted that they were overpaid and they do not dispute the 1956 figures. The landowners were unhappy about the lack of advanced knowledge as to the fact of overpayment.

The matter of estoppel has been considered by the Arizona Supreme Court in a number of cases. In the case of City of Glendale v. Coquat, 46 Ariz. 478, on page 481, 52 P.2d 1178, 102 A.L.R. 837 (1935) the Supreme Court stated on page 481 of the Arizona Reports, 52 P.2d on page 1180 that,

> "The essential elements of estoppel are that plaintiff, with knowledge of the facts, must have asserted a particular right inconsistent with that asserted in the instant action, to the prejudice of another who has relied upon his first conduct."

and in the case of Valley Products, Inc. v. Kubelsky, 49 Ariz. 500, 68 P.2d 69 (1937) the Supreme Court stated at page 506 of the Arizona Reports, 68 P.2d at page 72,

> "To constitute an estoppel in pais three things must occur: First, an admission, statement, or act inconsistent to the claim afterwards appealed and sued on; second, action by the other party on the faith of such admission, statement, or

act; third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act."

See also the June 23, 1965 Arizona Supreme Court case of Contreras v. The Industrial Commission of Arizona.

The trial court made no findings of fact which would support the conclusion of law as to an estoppel and in our opinion, an examination of the record does not disclose those facts which would be necessary to estop Mr. Ali from claiming the off-set by reason of overpayment. We, therefore, find an absence of evidence to support the conclusion of law that Mr. Ali was estopped from asserting his position.

The matter of "voluntary payments" is the crux of the problem which faces us. Arizona recognizes that voluntary payments cannot be recovered back. The Arizona Supreme Court in the case of Merrill v. Gordon, 15 Ariz. 521, 140 P. 496 (1914) denied recovery back of payments which the payor had insisted upon presenting to the payee even after the payee denied that there was any obligation between the two. The payor continued to make payments hoping that he would thereby create an obligation. On page 532 of the Arizona Reports, 140 P. on page 501 the Supreme Court quoted Cyc. in relation to the general rule as follows:

> "Except where otherwise provided by statute a party cannot by direct action or by way of setoff or counterclaim recover money voluntarily paid with a full knowledge of all the facts, and without any fraud, duress or extortion, although no obligation to make such payment existed."

The court further quoted from a Michigan case to the following effect,

> "Whether a payment was made voluntarily or not is a question of law, where the facts are undisputed."

The question of voluntary payments was discussed in Tway v. Southern Methodist Hospital and Sanitorium of Tucson, 48

Ariz. 490, 62 P.2d 1318 (1936). However, the TWAY case turned upon the fact that when TWAY received the note in question he had knowledge of the fact that the officer of the hospital did not have the authority, by himself, to transfer the note to TWAY.

In the case of Moody v. Lloyd's of London, 61 Ariz. 534, 152 P.2d 951 (1944), the Arizona Supreme Court held that an insurance company which made a payment under a policy where there was in fact and in law no liability to make such payment, could not recover back the payment so made and the court cited the rule quoted in Merrill.

An examination of the reference books and digests reveals that there are numerous cases throughout the United States which touch upon the various refinements of voluntary payments. We believe that no useful purpose would be served in an attempt to analyze these decisions.

■ In the case now under consideration, during the year 1956 when the payments in question were made there was a legal and binding obligation upon Mr. Ali to the landlords to pay some money as rent. The payment of the rent which was in fact due was not a voluntary payment. Under the oral arrangement in effect during the year 1956, there was no legal obligation on the part of Mr. Ali to make any payments until the final returns on each crop had been calculated. Under these circumstances it can be said that in a sense when Mr. Ali made payments before a due date such payments in part at least were voluntarily made. To hold that one who makes advanced payments in relation to an obligation which is unascertained only in the amount and as to the date that the payment became due, thereby makes such payments "voluntary" which cannot be off-set against the debt when it becomes due would be harsh indeed. The character of the obligation under the written lease was the same as the character of the obligation under the verbal arrangement, namely an obligation to pay rent for the use of the land. If it be that the 1956 payments can be classified in their entirety as voluntary payments without any right of off-set, then no one would be safe if that person paid any sum before the exact amount due became fixed or if payment was made before the due date or perhaps until sued, the matter reduced to judgment and the judgment had become final.

Years of trust and confidence and perhaps a mistaken understanding on the part of Mr. Ali that payments to Mrs. Sitts would be helpful to her in the building of the house cannot go for naught where the conversations leading up to the signing of the written lease were informal, inadequate and brief. This was a continuing landlord-tenant relationship which changed only in the form of the understanding.

We are not called upon to rule in relation to the $8.99 overpayment as any right to recovery thereof was waived at the oral argument.

These cases are reversed with directions to off-set the 1956 overpayment as found by the court against the 1957 and 1958 lease rent obligations resulting in a judgment of no recovery on the complaints of the plaintiffs and a judgment of no recovery on the counter-claims of the defendants. Each party is to bear his own costs in the trial court.

CAMERON and DONOFRIO, JJ., concurring.