415 P.2d 478

**Melvin F. NORVELLE et ux., Appellants,**
**v.**
**H. T. LUCAS, Appellee.***
**2 CA–CIV 239.**

Court of Appeals of Arizona.

June 17, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8224. The matter was referred to this court pursuant to A.R.S. section 12–120.23.

H. Earl Rogge, Jr., Tucson, for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Robert O. Lesher, Tucson, for appellee.

MOLLOY, Judge.

This is an appeal from a judgment rendered in favor of the plaintiff in the sum of $1,157.22. The theory of the plaintiff's complaint is that there was an oral contract between the plaintiff and the defendant to share certain real estate commissions earned by the defendant under an exclusive listing agreement on a real estate development on the outskirts of the City of Tucson, Arizona, known as Flecha Caida Ranch Estates. Both the plaintiff and the defendant were at all times concerned licensed real estate brokers.

The case was tried to the court without a jury and the court rendered findings of fact and conclusions of law. The defendant attacks the judgment rendered under eleven assignments of error.

The first five assignments pertain to the admission of the testimony of the plaintiff relating to the details of the sales of lots in Flecha Caida Ranch Estates. The defendant contends that the admission of this testimony violated best evidence and hearsay rules of evidence.

The plaintiff has countered this attack upon the judgment by pointing out that the trial court, in every instance, accepted the defendant's own testimony as to the sales in question and that, even if the trial court were in error in permitting the plaintiff to testify as to these sales, the error was harmless. An examination of the record convinces the court that this is true. When evidence is erroneously admitted by a trial court sitting without a jury, the court is presumed to have ignored such testimony, State v. Garcia, 97 Ariz. 102, 397 P.2d 214 (1964), and in this case the record clearly discloses that the court did just that. It being very clear that the defendant was not harmed by any error committed in the admission of evidence, we pass on to the other assignments of error.

The next five assignments of error all attack the sufficiency of the evidence to sustain the division made by the trial court

of the commissions earned. By specific findings, the court allocated 60 per cent of all commissions earned to the defendant, with the exception of the commission on one lot, which was personally sold by the plaintiff, which commission was allocated 60 per cent to the plaintiff and 40 per cent to the defendant. Altogether, commissions upon the sale of twelve lots were involved in the litigation. Of these twelve, the defendant personally sold three, the plaintiff sold one, and the rest were sold by outside brokers.

Both the plaintiff and the defendant agreed that the exclusive listing agreement with the owner of Flecha Caida subdivision originally provided for a 15 per cent real estate commission on sales, but their testimony was diametrically opposed as to the manner in which they had orally agreed to divide this commission and as to how the original exclusive listing agreement had been modified during the course of their association.

The plaintiff testified that originally the agreement was to divide the 15 per cent total commission by setting aside 5 per cent for an expense fund and if the sale was made by either the plaintiff or the defendant, to divide the remaining 10 per cent 60–40, with the selling broker getting the larger share. If an outside broker was involved, the outside broker was to get the 10 per cent. The 5 per cent in the expense fund, after the payment of expenses, was to be divided 60–40, with the defendant getting the majority share. After this agreement had been in effect for several months, the plaintiff testified the agreement was changed so that the owner of the tract took over control of advertising and reduced the commission of the plaintiff and the defendant to a total of 10 per cent on lots sold by either the plaintiff or the defendant, which they were to share 60–40, the same as before. Expenses of the enterprise were also to be shared as before, 60 per cent to be paid by the defendant. Under the modified listing contract, on a sale by an outside broker, the outside broker was to receive a 10 per cent commission, but, in this case, there would be no contribution to the owner's advertising fund and the plaintiff and the defendant were to share equally in a 5 per cent commission.

The defendant's testimony was that prior to the change in the agreement, occurring on March 15, 1960, if a lot was sold by either the plaintiff or the defendant, the selling broker was to receive one-half of the 15 per cent commission, or 7½ per cent. The remaining 7½ per cent was to be used for expenses and anything remaining over was to be divided 60–40, the larger share going to the defendant. On a sale by an outside broker, the outside broker would receive a 10 per cent commission and 5 per cent would be put into an expense fund, to be divided 60 per cent to the defendant and 40 per cent to the plaintiff after the payment of expenses. After the March 15 change in the agreement, the selling broker, as between the plaintiff and the defendant, was to receive all of the 10 per cent and 5 per cent would go to the owner's advertising fund, in which the association of plaintiff and defendant would have no interest. Expenses of the association, however, would still be divided 60–40, with the defendant paying the 60 per cent. If a sale was made by an outside broker, the outside broker would receive a 10 per cent commission, the association of the plaintiff and the defendant 2½ per cent and the owner would receive 2½ per cent for his advertising fund. The 2½ per cent received by the plaintiff and the defendant was to be divided 60–40, after the payment of expenses, the defendant receiving the larger share.

The sharing agreement given effect by the trial court does not conform completely to the testimony of either party, but can be supported in portions from the testimony of the plaintiff and in other portions from the testimony of the defendant. For instance, the court found:

"The agreement was that 60% of each commission was to be paid to the broker

effecting the sale, and 40% to the other member of the association."

(Finding No. 2.)

In so finding, the court rejected the defendant's testimony and accepted the plaintiff's. The four sales that were effected by one of the parties to this suit (lots 265, 414, 479 and 552), which occurred both before and after the change in the agreement of March 15, were divided by the court according to the formula of 60 per cent to the selling broker, and 40 per cent to the non-selling associate. The plaintiff's testimony that commissions on sales effected by either the plaintiff or the defendant were to be shared 60–40, both before and after the change of March 15, 1960, is corroborated by the sales contract and the closing statement prepared at the direction of the defendant as to a sale effected by the defendant on April 12, 1960 (defendant's Exhibits F and J).

There was no general finding by the trial court as to how commissions were to be divided when an outside broker effected the sale. However, the specific findings of the court on the other eight sales clearly indicate that the court accepted the defendant's testimony that after March 15 only 2½ per cent of the sales price was to go to the association of the plaintiff and the defendant and that at all times the association's share of the commission when a sale was effected by an outside broker was to be divided 60–40, 60 to the defendant and 40 to the plaintiff. In this regard, the trial court rejected the plaintiff's testimony that there was to be a 5 per cent commission after the contract modification, to be equally divided.

 We see nothing wrong with the trial court's piecing together what it conceived to be the true contract out of evidence coming from various sources. See, Winterton Ins. Agency v. Lannon, 85 Ariz. 21, 330 P.2d 987 (1958); Tang v. Avitable, 76 Ariz. 346, 264 P.2d 835 (1953); 5A C.J.S. Appeal and Error § 1657. The findings of the trial court being supported by credible evidence, they are binding upon this court on appeal. Ali v. Sitts, 1 Ariz. App. 439, 404 P.2d 100 (1965); In re Estate of Pitt, 1 Ariz.App. 533, 405 P.2d 471 (1965); Hurst v. Hurst, 1 Ariz.App. 227, 401 P.2d 232 (1965); Harbel Oil Co. v. Steele, 1 Ariz.App. 315, 402 P.2d 436 (1965).

The remaining assignments of error pertain to the finding as to the amount of expenses to be charged against the plaintiff under the agreement. The trial court's finding reads:

"The total of the expenses incurred by the association, to be divided as agreed on, was $833.69; in addition, defendant incurred the expense of the preparation of certain maps which were used, in part, by the association. The cost of the maps was $1023.18; the share allocable to the association was $511.59; of this, defendant is to be charged with 60%, and plaintiff with 40%, or $204.80."

The sum of $833.69 (supra) is $12.50 more than the total of a series of checks written by the defendant in connection with the expense of the subdivision (Exhibit 6). The only other expense claimed by the defendant pertained to the sum of $1,023.18 (supra), which was paid by the defendant for a certain brochure advertising Flecha Caida Ranch Estates, which contains several maps of the subdivision, and the sum of $1,902.16 which the defendant testified that he paid for attorney's fees and other expenses of litigation pertaining to two lawsuits filed to recover commissions on sales of lots in Flecha Caida.

The plaintiff testified that the agreement between the parties to share expenses did not include the brochure, which both parties agreed had been ordered by the defendant and prepared before the association of the two brokers came into existence. The defendant, however, testified that there was an express agreement to share in this previously incurred expense. During the course of the trial it was established that this brochure had been used by the association and that there had been some use made of it by the plaintiff after the defendant

ceased working in the subdivision. The record is not clear as to how much use the defendant made of this brochure while operating individually nor was there any evidence as to the value of the benefit actually received by the association from the brochure.

■ We construe the court's finding, supra, to be an acceptance of the plaintiff's testimony and a rejection of the defendant's as to the alleged express agreement pertaining to the brochure. It seems very apparent that the court relied upon some theory of quasi contract to allocate one-half of the expense of this brochure to the association, presumably on the theory of unjust enrichment, such as postulated by section 1 of the Restatement of Restitution.[1] Under the law previously cited, the trial court's acceptance of the plaintiff's version of the agreement is binding upon this court. The defendant has cited no law to the effect that an allocation of one-half of this expense to the association is erroneous under equitable principles of restitution.[2] We therefore assume the law to be favorable to upholding the decision of the trial court. Silva v. Traver, 63 Ariz. 364, 162 P.2d 615 (1945); DeHeer v. Seattle Post-Intelligencer, 60 Wash.2d 122, 372 P.2d 193 (1962).

The last assignment complains that the trial court did not apportion to the plaintiff part of the expenses of litigation incurred by the defendant in seeking to recover certain real estate commissions from the owner of Flecha Caida Ranch Estates. This litigation involved claims of the defendant against the owner in connection with twenty-eight lots, only seven of which were sales in which the plaintiff had an interest. Of the claims presented in this other litigation, $15,081.38 was claimed for sales other than those in which the plaintiff had an interest and $2,836.25 was claimed for sales of lots for which the plaintiff herein asked for a share of the commission. There was no testimony as to the value of any legal services performed nor was there any testimony which might aid the court in distributing the expenses of this litigation to the plaintiff, other than as stated above.

■■ We believe the burden of proof was upon the defendant to substantiate the proper amount to charge the association for these fees, Crouch v. H. A. Pixler & Son, 83 Ariz. 310, 320 P.2d 943 (1958), and we hold that the defendant failed in his proof in this regard.

Judgment affirmed.

HATHAWAY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.

1. "§ 1. Unjust Enrichment.
"A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of the Law of Restitution, § 1, p. 12 (1937).

2. Restatement of the Law of Restitution, § 155, p. 611 (1937), reads as follows:
"(1) Where a person is entitled to restitution from another because the other, without tortious conduct, has received a benefit, the measure of recovery for the benefit thus received is the value of what was received, *limited*, if the recipient was not at fault or was no more at fault than the claimant, *to its value in advancing the purposes of the recipient*, except as limited by the statement in Subsection (2).
"(2) Where a transaction is rescinded solely because of a mistake as to price, the recipient's duty of restitution is to pay not less than he expected to pay nor more than the claimant expected to receive." (Emphasis added)