[Civil No. 2464.   Filed April 24, 1926.]

[245 Pac. 277.]

THE FIRST NATIONAL BANK OF YUMA, a Corporation, Appellant, v. THE YUMA NATIONAL BANK, a Corporation, Appellee.

1. CHATTEL MORTGAGES—MORTGAGE GIVEN BEFORE CROP WAS PLANTED BECOMES OPERATIVE IMMEDIATELY ON PLANTING CROP (CIV. CODE 1913, PAR. 5555).—Although, under Civil Code of 1913, paragraph 5555, adopting common law, if not repugnant to written law or established customs, mortgage given before crop was planted

---

1. Validity of sale or mortgage of future and growing crops, see notes in 23 L. R. A. 452, 456; L. R. A. 1917C 11. See, also, 5 R. C. L. 407.

would not be valid, yet since possession is not necessary to protect lien, mortgage becomes operative immediately on planting crop.

2. MORTGAGES—MORTGAGEE HAS ONLY LIEN ON PROPERTY MORTGAGED PROTECTED BY RECORDING MORTGAGE AS PROVIDED BY STATUTE.— Mortgagee has only lien on property mortgaged which is protected, not by taking possession of property as under common law, but by recording mortgage as provided in statute.

3. CHATTEL MORTGAGES—LIEN OF MORTGAGEE TAKING MORTGAGE ON CROP AFTER IT WAS PLANTED IS SUBORDINATE TO THAT OF PRIOR DULY RECORDED CHATTEL MORTGAGE ON UNPLANTED CROP (CIV. CODE 1913, PARS. 2079, 2084).—Under Civil Code of 1913, paragraphs 2079, 2084, record of mortgage on unplanted crop constituted notice after crops were planted, and subsequent mortgagee was compelled to take notice of recordation, and its lien was subordinate to that of first mortgage.

4. CHATTEL MORTGAGES—MORTGAGE ON UNPLANTED CROP, MENTIONING COTTON AS MAJOR CROP, BUT ALSO COVERING ALL OTHER CROPS, HELD TO COVER OTHER CROPS AS AGAINST LATER MORTGAGE.— Where mortgage on crops to be planted specifically mentioned cotton as major crop to be planted, but also covered all other crops, other crop than cotton was covered thereby, as against later mortgage, given after crop was planted specifically naming such other crop.

See (1, 2) 11 **C. J.**, p. 399, n. 3, p. 443, n. 70, 71, p. 517, n. 20, 21. (3) 11 **C. J.**, p. 435, n. 25.   (4) 11 **C. J.**, p. 468, n. 33, 35.

APPEAL from a judgment of the Superior Court of the County of Yuma.  E. Elmo Bollinger, Judge. Judgment reversed and cause remanded, with directions that judgment be entered in favor of The First National Bank of Yuma.

Messrs. Robertson & Campbell, for Appellant.

Mr. William H. Westover, for Appellee.

ROSS, J.—The question involved in this suit is the validity of a duly recorded chattel mortgage upon an unplanted crop of maize as against a later mortgage on the same crop given after it was planted.

2.  See 5 **R. C. L.** 439.

The First National Bank of Yuma took from one W. A. Gray two chattel mortgages on crops that the mortgagor had not then planted but contemplated planting. These mortgages were on cotton to be planted and grown during 1924 and 1925, in acreage and description as follows: forty acres of the N. W. ¼ of the N. W. ¼, thirty acres of the S. W. ¼ of the N. W. ¼ and thirty acres of the N. W. ¼ of the N. E. ¼ of section 4, township 9 south, range 24 east, Yuma county, and all other crops of whatever nature planted or grown on said premises, whether in lieu of, or in addition to, the cotton crop above described. The first mortgage was for $1,500, and was executed and recorded in Yuma county January 14, 1924, and the second was for $600, and was executed and recorded February 16, 1924. These mortgages, in addition to crops, covered farm implements and horses of the mortgagor.

On May 31, 1924, Gray gave to the Yuma National Bank, to secure the payment of $1,150, a chattel mortgage on a one-half interest in seven acres of maize then growing on the N. W. ¼ of the N. W. ¼, two-thirds interest in fifteen acres of maize then growing on the S. W. ¼ of the N. W. ¼; and two-thirds interest in ten acres of maize then growing on the N. W. ¼ of the N. E. ¼ of said section 4.

When the mortgages to the First National Bank were given, Gray had no intention of planting maize, but expected to grow something else.

After the mortgagor had harvested the 1924 crop of maize, the Yuma National Bank, claiming the same as mortgagee, replevied it, whereupon the First National Bank instituted proceedings to try the rights of property in said maize under the provisions of the statute, paragraph 1648 et seq., gave bond as therein provided and obtained possession of maize.

Thereafter, in due course, issues were made up in writing under the direction of the court, as the statute provides. A trial was had before the court without a jury, and judgment entered in favor of the Yuma National Bank upon the theory that in this jurisdiction a chattel mortgage upon unplanted crops is of no validity as against a chattel mortgage on the same crop after it was planted. Whether the court was right in that conclusion is the question that we have to decide.

The rule of decision in Arizona is the common law, if consistent with, and adaptable to, local conditions and the necessities of the people, and not repugnant to written law or established customs. Paragraph 5555, Civil Code, 1913. At the common law a mortgage upon a crop already planted was recognized as valid. Under this rule the mortgage to the Yuma National Bank was a good mortgage because the crop of maize had been planted and was growing at the time it was given. The rule when the crop had not been planted at the date of giving mortgage was different. In such case the mortgage was not good. The reason it was of no validity was because a mortage under the common law was treated as a conveyance that had the effect of changing the title of property from the mortgagor to the mortgagee; it was a sale of the property to the mortgagee with a defeasance clause. Since a sale or transfer of property not *in esse* could have nothing to operate on, a mortgage of it was considered and treated as ineffectual to pass title, and therefore void. If, after giving such a mortgage, the mortgagor goes ahead and plants the crops contemplated and intended to be mortgaged, and thereby gives it potential existence, we believe the courts generally hold the instrument from that time to be an equitable mortgage, and good not only as to the par-

ties, but also as to purchasers and encumbrancers with notice. 11 C. J. 443, § 51. A mortgage under our law has never had the effect of transferring title to the mortgagee; it gives the mortgagee only a lien upon the property mortgaged; and this lien is protected, not by the taking possession of the property as under the common law, but by recording the mortgage as provided in the statute.

If under the common law, where the mortgagee took legal title, his mortgage upon an unplanted crop, although invalid when given, becomes valid in equity upon the planting of crop and binding upon the parties and all persons having notice, the same result must follow in those jurisdictions holding the mortgagee's interest limited to a lien. Therefore the mortgages to the First National Bank became operative upon the planting of the maize, and, if the Yuma National Bank had notice of such mortgages when its mortgage was taken, its lien is subordinate to the first mortgages.

It is not contended that the Yuma National Bank had actual notice of the prior mortgage, but it is contended that it had the constructive notice recordation gives. On this point the authorities do not seem to agree. 11 Corpus Juris, 435, states that constructive knowledge furnished by the record is not sufficient, but that the knowledge must be actual. This view was adopted by the court in *First National Bank* v. *Felter,* 65 Colo. 370, 176 Pac. 496, wherein the question is discussed at some length. We are not satisfied that this rule is correct, especially under our recordation statutes. Paragraph 2079, Civil Code, authorizes to be recorded "instruments of writing . . . concerning any lands and tenements, or goods and chattels, or movable property of any description," and paragraph 2084, Id., provides that such a record "shall

be taken and held as notice to all persons of the existence of such grant, deed, or instrument.''

The mortgages to the First National Bank were ''concerning'' the lands described and the crops to be grown thereon, and therefore were instruments authorized to be recorded, and, when recorded, became notice to the world. If these mortgages were at all times, from their inception on, of no validity, it could well be said their recordation would be ineffective as notice; but, as we have heretofore shown, they became valid and binding instruments as soon as the crops were planted, and from that time on at least, if not before, they were properly of record, and the Yuma National Bank was compelled to take notice thereof and of their contents. Having taken its mortgage with such notice, its lien on the crop of maize is subordinate to the lien of the First National Bank.

It is further contended that the parties at the time of the execution of mortgages to the First National Bank did not intend that maize should be planted on the described premises, and that, therefore, when planted, it was not covered by the mortgages. It is true the mortgages themselves specifically mention cotton as the major crop to be planted, but they also cover ''all other crops, of whatever nature, planted or grown on said premises, whether in lieu of or in addition to the cotton crop above described.'' The planting of the maize was in accordance with the terms of the mortgages, which, as we construe them, expressed only a preference for a cotton crop.

We have come to the conclusion that the mortgages to the First National Bank on the crops to be planted upon the described premises ripened into validity as soon as said crops were planted, and that the recordation thereof was constructive notice to the Yuma National Bank.

30 Ariz.—13

For these reasons, the judgment is reversed and the cause remanded, with directions that judgment be entered in favor of the First National Bank of Yuma.

McALISTER, C. J., and LOCKWOOD, J., concur.