285 P.2d 168

The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation, Appellant,

v.

John C. KELTON and Andrew J. Kelton, co-partners doing business as John C. Kelton and Son, and Albert Behrstock, Ralph G. Burgbacher and A. J. Burgbacher, Appellees.

No. 5838.

Supreme Court of Arizona.

June 21, 1955.

Fennemore, Craig, Allen & Bledsoe and Walter E. Craig, Phoenix, for appellant.

Moore & Romley and Anthony T. Deddens, Phoenix, for appellees John C. Kelton & Son.

Jennings, Strouss, Salmon & Trask and Rex H. Moore, Phoenix, for appellees Behrstock and Burgbacher.

UDALL, Justice.

This action, brought to recover damages for injuries inflicted by defendants to plaintiff's underground telephone cable, was tried to the court sitting without a jury, result-

ing in a judgment for the defendants, and plaintiff appeals. The parties will be designated the same as they were in the lower court.

The evidence discloses that the Mountain States Telephone & Telegraph Company, a corporation, plaintiff-appellant, is a public utility engaged in the telephone and telegraph business in the intermountain west. It maintains an underground trunk cable extending from its main offices at Third Avenue and Adams in Phoenix, Arizona, to its North office at Second Street and Indian School Road. This trunk line consists of four lead-covered cables enclosed within a single conduit which is made of clay tile. The conduit is divided into four sections under one housing, and the whole thereof is covered by a concrete cap. Concrete box manholes for convenience in installation and repair work are located at intervals of approximately 600 feet along the line.

On July 27, 1928, plaintiff entered into a written agreement with Central Avenue Dairy, Inc. (who were then the owners of the SW¼ of Sec. 29, T. 2 N., R. 3 E., G. & S.R.B. & M., containing approximately 160 acres of land bounded, roughly speaking, by Osborn Road on the north, Central Avenue on the east, Thomas Road on the south, and Seventh Avenue on the west), by the terms of which plaintiff was granted a perpetual easement for right of way across a portion of said lands for the purpose of installing and maintaining an un-

derground conduit for telephone and telegraph cables, together with manholes used in conjunction therewith. The agreement specifically described the course to be followed in laying a conduit and it makes reference to an attached blueprint which is made a part thereof, and upon said plat is shown in great engineering detail the precise installation. The easement contains inter alia the following pertinent provision:

"* * * during the course of the construction, repair, and/or maintenance of said lines, conduit and manholes not to cause nor permit any damage or injury to any of the livestock, equipment, crops or other property of Owner, *nor any interference with or interruption of the operations or conduct of Owner's farming and/or dairying business on said premises.*" (Emphasis supplied.)

The agreement, with blueprint attached, was thereafter duly placed of record in the office of the county recorder of Maricopa County.

Pursuant to this agreement, the plaintiff in the year 1930 laid a conduit, containing its cables, underground on said property, along what would be an extension of Third Avenue from Merrill Street north to Osborn Road, where they have remained continuously—with but the instant untoward incident—to this day. The conduit practically follows the center of projected Third Avenue along what the engineer terms "Six-

teenth Sec. Line". A portion of the surface over the cable was used by the dairy company as a private driveway.

The defendants-appellees, Behrstock and Burgbacher, acquired all of the capital stock of Central Avenue Dairy in January, 1951, and upon dissolution of that company became the successors in interest to the premises in question. These defendants will hereinafter be designated as such or as the owners. Thereafter the new owners employed the services of defendant-appellee John C. Kelton and Son, licensed contractors—hereinafter termed the contractor or defendant—to do certain clearing work on the premises. Thereupon said contractor entered upon the premises, pursuant to written and oral agreements with the owners, for the purpose of clearing and levelling the ground in accordance with the general plan to convert the use thereof into a residential and business subdivision which is now known as "Park Central Development".

The contractors employed the use of a bulldozer to dig up trees, concrete footings and other installations. The fallen trees were then skidded to a common point in an open field that had been used for pasture and were there burned. It so happened that the spot selected for this was directly over plaintiff's conduit line. R. T. Moman, the bulldozer operator, was, on the morning of August 5, 1950, engaged in "spoiling out" any sign of the fire by trenching or excavating to mix the accumulated ashes with dirt to prevent the ashes from being strewn and blown about. While thus engaged the bulldozer blade struck the conduit and severed a 455 pair 19-gauge lead-covered cable and damaged the other top cable containing 909 pair 22-gauge lead wires. The two lower cables in the conduit were not disturbed.

Defendants refusing to pay for the resulting damage, suit was brought by plaintiff for destruction and damage to its property. All the defendants answered. The owners alleged that the damages, if any, sustained by plaintiff were the direct and proximate result of the sole negligence or the contributory negligence of plaintiff, or the result of an unavoidable accident or of the assumption of risk by plaintiff. Judgment was entered for all defendants. Motions for new trial and to set aside the judgment were filed by plaintiff and denied by the court and this appeal followed. In addition the owners filed a cross claim against contractors Kelton, upon which judgment was entered denying owners any relief, and no appeal was taken therefrom.

There are but two findings that need concern us. First there was a sharp conflict in the evidence as to the depth at which the damaged conduit was buried, witnesses for the defendants fixing it at from 25½ to 30 inches, whereas the plaintiff's witnesses ranged from a minimum depth of 30 inches to approximately four feet. The court found:

"* * * that the facts are, that the cable was broken at the point where the bulldozer hit it; that the bulldozer was

approximately two and a half feet below the surface of the land on which it was working. * * *"

And second, as to the matter of knowledge of the existence of an easement, the court made this finding of fact:

"* * * That Mr. Burgbacher had knowledge of the existence of the easement; that Mr. Kelton did not have actual knowledge of the existence of the easement; that Mr. Kelton was unable by the exercise of the care which a reasonable and prudent person would have exercised under all the circumstances to determine that there was a cable and conduit in that particular spot. * * *" .

Unquestionably, the first amended complaint on which the case was tried stated a "claim for relief" under Rule 8(a), Rules Civ.Proc., Sec. 21–404, A.C.A.1939; furthermore it is apparent from the allegations that the pleader primarily bottomed his claim on negligence. It was not until the close of the case that counsel for plaintiff asked and was denied permission—as being unnecessary—to amend its complaint to conform to the proof by setting forth a claim bottomed upon trespass.

### Liability of Contractor

■ Plaintiff contends that the court erred in finding the contractor exercised reasonable care for the reason

"that the undisputed evidence shows that defendants John C. Kelton and Son entered upon the property of plaintiff with heavy digging equipment without making any inquiry as to what might lay below the surface of the premises although the right of way for the placing of the conduit and a cable was matter of record * * *."

■ From the record it appears that the court's finding, hereinbefore set forth, that defendants Kelton by the exercise of due care were unable to learn of plaintiff's cable, is supported by competent evidence and hence cannot be disturbed upon appeal. It is admitted that the contractor had no actual notice that there was a buried cable, nor was this fact apparent from the visible inspection made by them of the premises prior to commencing the contracted work. We cannot agree with the implication that the contractor was bound to search the records and is charged with constructive notice of the contents thereof. While this court has often said · "* * * instruments authorized to be recorded, * * * when recorded, became notice to the world", First National Bank of Yuma v. Yuma Nat. Bank, 30 Ariz. 188, 245 P. 277, 278, see, also, Valley Products, Inc., v. Kubelsky, 49 Ariz. 500, 68 P.2d 69, it is apparent this statement is not wholly accurate. As stated by the Supreme Court of Pennsylvania:

"It is sometimes said that the record of a deed is constructive notice to all the world. That, it is evident, is too broad and unqualified an enunciation of the doctrine. *It is constructive no-*

*tice only to those who are bound to search for it * * *."* (Emphasis supplied.)

Maul v. Rider, 59 Pa. 167, 171. For a good statement of the rule, see 66 C.J.S., Notice, § 13 c, page 650. We do not believe the contractor in the instant case was bound to search the record to learn of plaintiff's easement. He had no interest in the title to the land. We have been cited to no cases where constructive notice was applied to such a situation, nor has an independent search revealed such an extension of the doctrine. We hold defendants Kelton were not charged with notice of plaintiff's easement, hence this assignment of error is without merit.

■ Plaintiff further asserts the undisputed evidence showed a trespass by Keltons upon the plaintiff's property.

Defendants on the other hand maintain "The common law action of trespass *quare clausum fregit* is not available for disturbance or obstruction of an easement for the reason that the person having the easement does not have a possessory interest in the land but merely the right to use it for a specific purpose," advancing the proposition that:

"The case law clearly shows that in order to recover plaintiff must prove negligence on the part of defendants, or an intentional wrong, or an unlawful use of the property in question under the law of easements."

There are but few cases dealing with an injury to a conduit or pipeline lawfully installed under private property. Cf. Illinois Bell Telephone Co. v. Charles Ind. Co., 3 Ill.App.2d 258, 121 N.E.2d 600, for an excellent discussion of the problem presented where the conduit is beneath a public street. The case of Socony-Vacuum Oil Co. v. Bailey, 202 Misc. 364, 109 N.Y.S.2d 799, 801, is the case closest on its facts to those of the case at bar. There plaintiff, under a duly recorded easement, maintained a pipeline across certain rural property. Defendant, hired by the owner to level this property, struck this pipeline with a bulldozer. There was no proof defendant had actual knowledge of the location or existence of the line. The court pointed out that recovery could not be predicated on the common-law action of trespass *quare clausum fregit* and it stated *trespass on the case* was the proper remedy for trespass to its easement; or where there was a trespass to the personalty an action of trespass *vi et armis* or *de bonis asportatis* would lie. The court held that the evidence supported no claim of negligence, and that any liability must be based upon another theory. It stated:

"It is important to analyze the act which constitutes the alleged trespass before it can be found to be actionable under the principles underlying any of the common-law actions of trespass. In the absence of any question of negligence, the requisites were the same whether the act was to be remedied

by an action of trespass to chattels or an action on the case. *Before the act was actionable, it was necessary that it be voluntary. (Citation.) There is no question that in the instant case the defendant was acting voluntarily when he operated the bulldozer in such a manner as to strike the plaintiff's pipe line. It must, however, have been more than just a voluntary act. The act must also have been intentional* except in a case of negligence which it has already been established is not involved herein. It was not necessary, however, that the trespasser intend to commit a trespass or even that he know that his act will constitute a trespass, (citation). The actor may be innocent of moral fault, but there must be an intent to do the very act which results in the immediate damage. *In other words, trespass requires an intentional act.* (Citation.) Applying this requirement to the case at bar, it is difficult to find the defendant's act in striking the pipe to be an actionable trespass. There is no proof that the defendant intended to strike the pipe and, in fact, it is clearly established to the contrary, for he did not know the existence or location of the line, nor is he charged with such knowledge for purposes of determining whether his action was intentional. Without an intentional act, the defendant's conduct cannot give rise to a trespass and, therefore, the plaintiff's cause of action based on the theory of trespass must fail." (Emphasis supplied.)

We are of the opinion that this statement applies to the instant case. We hold the trial court did not err in finding, in effect, the contractor was not liable to plaintiff on either the theory of negligence or trespass. Judgment was therefore properly entered in favor of John C. Kelton and Son.

## Liability of the Owners

Plaintiff by an amended assignment of error contends:

"The Court erred in finding that the defendants Behrstock and Burgbachers were not guilty of negligence, because the undisputed evidence shows that the right of way allowing plaintiff to place its conduit and cable through and upon the premises was of record in the office of the County Recorder of Maricopa County, Arizona, and the defendants * * * had actual knowledge of the location of said conduit and cable and failed in the exercise of ordinary care to notify their employees, defendants John C. Kelton and Son thereof."

It will be remembered that the court found the owners had "knowledge of the existence of the easement", and this finding is overwhelmingly supported by the record. As a matter of fact, the agreement granting an easement accurately described the location of plaintiff's conduit and in addition there was on record, attached to

the grant, an engineer's blueprint showing in great detail precisely the course along which the conduit was laid. One of the owners admitted that at the time he received and examined a preliminary title report on the property, his attention was called to the easement held by plaintiff and, as a matter of law, the owners were also charged with constructive notice thereof. Had they paid the slightest attention to same the damage complained of need not have occurred for it is our opinion that a reasonable person would not have permitted his contractor to make excavations such as are shown by this record without warning the contractor of the existence of the conduit installation.

■ We have heretofore recognized that often the existence of negligence in a given situation may best be determined by an analysis of the problem in the terms of duty, its violation, and resulting injury. Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352. In the instant case the plaintiff had the right to lay its cable in accordance with the terms of the grant and to maintain it without interference of the owners. The owners had the correlative duty not to interfere with or obstruct plaintiff's use of the property for this purpose. In other words, the owners had the right to enjoy the occupancy of the premises, but that occupancy could not interfere with plaintiff's rights. It cannot be questioned that the owners had the right to clear and level the property and render it suitable for residential development. This right, however, did not relieve them of their duty to plaintiff, and in the exercise of this right they were required to take reasonable precautions to prevent injury to plaintiff by an invasion of its rights. Further, the extent of these precautions must be measured by the anticipated risk of harm. "Duty in a given situation is commensurate with the dangers involved. * * *" Crouse v. Wilbur-Ellis Co., supra. See Tucker v. Collar, 79 Ariz. ——, Ariz., 285 P.2d 178.

■ In the case at bar, the owners, having both actual notice and being charged with knowledge of plaintiff's buried cable, could reasonably anticipate the risk of harm to which they were subjecting plaintiff's property. It was contemplated that the contractors in performing the contract would uproot and remove numerous trees— including large roots extending to a depth of four feet. Ensilage pits were to be filled; concrete footings to a water tank removed; deeply-imbedded headgates and a concrete bridge over an irrigation ditch were to be torn out. Further it appears that many of the trees and structures to be removed were located within a very few feet of the conduit line. Of course, the use of heavy machinery was required for these purposes. The record reveals that as such operations were carried forward, with the owners' full knowledge, excavations to depths of four or five feet were frequently necessary to accomplish the various tasks contemplated. Under such

circumstances, it appears as a matter of law the owners, as reasonable persons, could anticipate an invasion of plaintiff's rights from these activities, and therefore owed to plaintiff the duty to use such care and caution as an ordinarily prudent person in like circumstances would use to avoid harming plaintiff.

Our next concern is whether this duty was violated. From the record we think violation is apparent. There were no steps taken to protect the plaintiff's interests from harm. The contractor was not informed that plaintiff's cable was buried beneath the ground, nor was he cautioned that any such installation might be encountered. We hold that the owners' failure to advise their contractor of the existence of plaintiff's conduit, or to take any steps at all to protect plaintiff's property from harm, as a matter of law constituted a violation of their duty to use care and caution to avoid harming plaintiff and therefore constituted negligence.

Under the facts of the case at bar the owners could well foresee an invasion of plaintiff's legally protected interests by their activities, and hence were required to take adequate measures to prevent that invasion. No such steps were taken, and the injury, unreasonable risk of which should have been foreseen, occurred. This constitutes actionable negligence.

Defendants lay much stress upon the court's finding that the cable was buried at a depth of only two and one-half feet, contending that the cable was therefore not placed in accordance with the easement and plaintiff was in effect a trespasser. It is obvious from the record that the trial court largely predicated its judgment upon this finding of what it considered to be too shallow a depth. However we can attach no legal significance to this finding. While the grant specified no depth at which the cable was to be buried, it was required that it be so placed that it caused no "* * * interference with or interruption of the operations or conduct of Owner's farming and/or dairying business on said premises." That the cable was sufficiently deep to meet this requirement is conclusively shown by the undisputed fact that the cable was not disturbed during some twenty years of normal farming and dairying operations, but was cut in the process of excavating a trench for purposes completely foreign to such activity.

Stripped to its barest essentials, it indubitably appears that plaintiff was making an authorized use of the owners' premises pursuant to its easement therein. The owners, though charged with knowledge of the presence of the cable, initiated an activity which might well and did inter-

fere with plaintiff's authorized use thereof. To hold, in such a situation, that plaintiff has no redress for that interference is consonant neither with justice nor reason. The rights of plaintiff were invaded to its damage and defendant-owners must respond therefor.

We are of the opinion, as a matter of law, that the trial court erred in entering judgment that plaintiff recover nothing from defendant-owners and its judgment to this effect must be reversed. Moreover, plaintiff established by uncontradicted testimony that the damages sustained were in the sum prayed for, and there is, therefore, no occasion for a new trial. Accordingly the judgment of the lower court is affirmed as to contractor and is reversed as to the owners, with directions to enter judgment for plaintiff against the owners-defendant in the sum of $2,117.64 with interest and costs.

Judgment affirmed in part and reversed in part with directions.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.