John S. COVER, d/b/a Cover Construction Company, Appellant,

v.

PHILLIPS PIPE LINE COMPANY, a Corporation, Respondent.

No. 54907.

Supreme Court of Missouri, Division No. 1.

June 8, 1970.

Joseph H. Mueller, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellant.

Coburn, Croft, Kohn & Herzog, Alan C. Kohn, Charles G. Siebert, St. Louis, for respondent; Wm. J. Zeman, Lloyd G. Minter, Stanley L. Cunningham, Bartlesville, Okl., of counsel.

HOUSER, Commissioner.

John S. Cover, d/b/a Cover Construction Company, hereinafter "contractor," sued Phillips Pipe Line Company, hereinafter "pipeline," for $24,000 damages for partial destruction of a Caterpillar tractor by fire following rupture of defendant's pipeline while contractor was engaged in terracing work on a farm in Pettis County. Pipeline counterclaimed for $27,609 damages to the line and for loss of revenue resulting from the rupture. A jury returned a verdict against contractor on his petition and against pipeline on its counterclaim. Contractor filed a motion for new trial which was overruled. Pipeline filed a motion for judgment on its counterclaim on the issue of liability in accordance with its motion for a directed verdict at the close of the case, which was sustained. The court also sustained pipeline's motion for new trial on the issue of damages only. In the alternative the court sustained pipeline's motion for new trial on six specified grounds. Contractor appealed from all orders.

Contractor charged in his petition and submitted to the jury that pipeline negligently failed to provide adequate warnings of the location of the pipeline. Pipeline answered by way of a general denial and pleaded, inter alia, contributory negligence in that contractor's employees knew or in the exercise of due care should have known of the existence and location of the pipeline but negligently failed to exercise reasonable care to avoid running into the pipeline. This defense was submitted to the jury by Instruction No. 4–A as follows:

"Your verdict must be for defendant on plaintiff's claim for damages, whether or not defendant was negligent, if you believe:

First, (a) Plaintiff knew, or by using ordinary care should have known, of the existence of defendant's pipe line at the place where plaintiff's employee Kenneth Austin was operating the bulldozer, and plaintiff failed to warn his employee Kenneth Austin of the existence of the pipe line, or (b) Plaintiff, acting by and through his employee Kenneth Austin, knew, or by using ordinary care should have known, of the existence of defendant's pipe line and failed to avoid striking and rupturing the pipe line, and

Second, plaintiff's conduct, in any one or more of the respects submitted paragraph first, was negligent, and,

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

■ Contractor's first point is error in giving Instruction No. 4–A because not supported by evidence that contractor knew or should have known of the existence of the pipeline on the farm in question at the place where contractor's employee was operating the bulldozer. There was evidence on this issue as follows: The pipeline runs parallel to and 150 feet south of the county road. The existence and location of the pipeline is marked by fence posts in cross fences painted with two stripes of paint, one orange and the other yellow. The marked fence posts can be seen from the road. In 12 miles of pipeline there are 132 painted fence posts observable from the road. In that 12 miles there are 12 signs showing the existence of the pipeline. There were two painted fence posts on the west line of the field in which the rupture occurred located approximately 400 feet from that place. The paint on those posts could be seen from that place. They could also be seen from the road at the point where the bulldozer entered the field. The colors were "clearly visible." Contractor's bulldozer operator Austin knew that painted fence posts indicated the presence of a pipeline. He was familiar with this county road. He had been up and down the road many times, "Maybe a dozen times." He had done work on the same farm a year before this accident occurred. In his deposition he testified that on that occasion the work consisted of ripping out a fence row possibly 300–400 feet east of the place where the pipeline was ruptured. Harold Smith, construction and maintenance superintendent of the pipeline, went to the scene of the accident shortly after it occurred. There he had a conversation with Austin. After Smith expressed his regret that pipeline had not been notified of contractor's intention to do the terracing, and had stated that pipeline could have marked the pipelines, Austin remarked, "I should have known, I was on this property a few months ago, I knew the pipelines were in this area, but I don't know why I didn't think of it." John Cover's deposition testimony, read to the jury, indicated that he knew that Austin was going out on that farm to do this work; that from time to time and in different locations prior to the date in question Cover had observed painted fence posts which to him indicated the existence of a pipeline; that there were painted fence posts at the west line; that while you have to get fairly close to them before you can distinguish them, he had observed them prior to November, 1965. (Cover retracted this deposition testimony at the trial but it bears on the evidentiary support for the giving of the instruction.) The foregoing is sufficient evidence of record to support the giving of the instruction and to authorize the jury to find that both contractor and his operator knew or should have known of the existence of the pipeline.

■ Contractor's second point is that Instruction No. 4–A is not in MAI. Where as here no applicable MAI instruction is provided the parties are required to give an instruction which is simple, brief, impartial, free from argument and which does not submit to the jury or require findings of detailed evidentiary facts. Civil Rule 70.01 (e), V.A.M.R. Instruction No. 4–A conforms to this requirement.

■ Contractor says that Instruction No. 4–A does not comport with the purpose of MAI in that it does not require the finding of any essential facts or provide any standard by which to measure either contractor's conduct or that of his employee, and constitutes a roving commission. The essential facts on the contributory negligence issue were whether contractor's employee knew or in the exercise of ordinary care should have known of the existence and location of the pipeline and negligently failed to exercise reasonable care to avoid running into it. The instruction required the jury to find these facts, or in the alternative to find that contractor himself had this knowledge, actual or constructive, and failed to warn his employee. There was evidence to support both alternatives. The instruction requires a finding of conduct that is "negligent" and the measuring

stick by which negligence is to be gauged is laid down in Instruction No. 2 which defines negligence. There is no "roving commission" violation.

■ Next, contractor urges that the instruction makes two untenable assumptions: (1) that the painting of the fence posts was sufficient notice of the presence and location of the pipelines, whereas the closest fence posts were 400 feet west of the point of rupture, and (2) that the paint on those posts was plainly visible from that distance, whereas plaintiff's evidence shows that "after you got right up close to it you could see it, the color was faded out. You have to get fairly close to them before you can distinguish them," supported by pipeline's evidence that the fence posts are repainted only every 2 or 3 years and that the paint on the two fence posts at the west line of the property was sun-faded. Contractor argues that pipeline witness Smith's testimony that the paint on the two posts had been faded by the sun leads to the inescapable conclusion that the paint did not impart sufficient and adequate notice and warning to the public, and particularly to contractor and his employee. This argument goes to the weight of the evidence, which was a matter for assessment by the jury. Instruction No. 4–A submits the question of the sufficiency and adequacy of notice without any assumption of facts and, as demonstrated above, there is an evidentiary basis for a finding that either contractor or his employee or both of them had actual or constructive notice of the existence and location of the pipeline.

■ Finally, it is said that the instruction is a *felo de se*. This point is disallowed. The alternatives are not inconsistent. The theory and proof of one does not negate, repudiate or disprove the other. The two acts of negligence could coexist and either could exist independently of the other.

The next question is whether the court erred in denying contractor's motion for a directed verdict on pipeline's counterclaim. A cognate question is contractor's fourth point, that the court erred in sustaining pipeline's after-trial motion for judgment on the issue of liability on the ground that contractor is liable as a matter of law on the theory of trespass. Our conclusion is that the court made no mistake in denying contractor's motion but that the court erred in sustaining pipeline's motion.

Pipeline's counterclaim was in two counts. Count I was framed on the theory of trespass; Count II sounded in negligence. Count I alleged that pipeline had an easement and that contractor's earthmoving machine obstructed, intermeddled and interfered with its easement by piercing the pipeline to its damage. Count I sought to impose absolute liability upon contractor if in operating his machine the pipeline was pierced, regardless of contractor's knowledge or that of his operator and regardless of the care exercised. Citing Mountain States Telephone & Tel. Co. v. Vowell Const. Co., 161 Tex. 432, 341 S.W.2d 148; Illinois Bell Telephone Co. v. Chas. Ind. Co., 3 Ill.App.2d 258, 121 N.E.2d 600; United Electric Light Co. v. Deliso Const. Co., 315 Mass. 313, 52 N.E.2d 553; Frontier Telephone Co. v. Hepp, 66 Misc. 265, 121 N.Y.S. 460; Phillips Pipe Line Co. v. Razo, Tex., 420 S.W.2d 691, pipeline claims that contractor, through his employee, intended to do the act which caused the rupture and is not protected on the basis of innocent mistake; that the question is not one of negligence but of unlawful trespass; and that the severing of the pipeline created a case of absolute liability regardless of negligence for violation of pipeline's possessory or proprietary interest in its easement and the puncturing of the pipeline which was lawfully in place, and that this result follows "whether we are dealing with a trespass to land or a trespass to a chattel."

■ Whether the pipeline be considered a chattel or real property in which pipeline had an interest, in order to fix liability for a physical intrusion causing damage to the

pipeline on the theory of trespass there must have been an intention to bring about the intrusion; otherwise pipeline is relegated to a claim based on a negligence theory.

■ An intent to intrude upon or intermeddle is an essential element of trespass to a chattel. "Under the principle of law that allows recovery for a trespass to chattels, it is necessary that the defendant have acted for the purpose of interfering with the chattel, or, what is almost the same thing, that he have acted with knowledge that such would be the result of his conduct. In other words, he must have intended the intermeddling. If he does not intend thus to meddle, he is not liable today as a trespasser; but if his conduct is negligent, he is liable under the principles of the law of negligence." Harper and James, The Law of Torts, (1956) Vol. I, § 2.5, p. 109. "In common with other progeny of the old action of trespass, such as assault and battery, trespass to chattels has become, in modern usage, exclusively a wrong of intentional interference." Prosser, Law of Torts, 3rd Ed., § 14, p. 77. According to Restatement of the Law of Torts 2d, § 217, "A trespass to a chattel may be committed by intentionally * * * intermedding with a chattel in the possession of another," and the intention required "is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act." Idem, p. 418.

■ The same intent is required to establish a claim of trespass to real property. "Generally speaking, therefore, when there is an act of volition which results in a physical intrusion of another's land there is no liability in the absence of an intention to bring about the intrusion or negligence in the doing of the act." Harper and James, The Law of Torts, (1956) Vol. I, § 1.4, p. 15. (Exception noted in cases involving extra-hazardous activities, such as blasting.) Where there is no intentional, voluntary, conscious act there is no

trespass. Wisconsin Power & Light Co. v. Columbia County, (1958) 3 Wis.2d 1, 87 N.W.2d 279, 283; Socony-Vacuum Oil Co. v. Bailey, 202 Misc. 364, 109 N.Y.S.2d 799; Mountain States Telephone and Tel. Co. v. Kelton, 79 Ariz. 126, 285 P.2d 168; Texas-New Mexico Pipeline Co. v. Allstate Construction, 70 N.M. 15, 369 P.2d 401. (Statements in Dyer v. Tyrrell, 142 Mo. App. 467, 127 S.W. 114, and Houck v. L. A. Tucker Truck Lines, Mo.App., 131 S.W. 2d 366, that "In civil actions for damages for trespass the intent of the party committing the trespass is immaterial" refer to moral fault. In other words, the actor while intending to do the very act which results in the immediate damage, may not in so doing intend to commit a trespass; may not even know that his act will constitute a trespass and may be acting in good faith and through honest mistake, and yet be liable in trespass.)

■ The case of Socony-Vacuum Oil Co. v. Bailey, supra, is instructive in this situation. In that case plaintiff operated a pipeline over private property in a rural area, under a recorded easement. Defendant, who had been employed by the landowner to level the property, struck the pipeline with a bulldozer. In discussing the liability of the defendant in trespass, and after stating that at common law it was necessary that the act be voluntary in order to be actionable, the court continued: "There is no question that in the instant case the defendant was acting voluntarily when he operated the bulldozer in such a manner as to strike the plaintiff's pipe line. It must, however, have been more than just a voluntary act. The act must also have been intentional except in a case of negligence which it has already been established is not involved herein. It was not necessary, however, that the trespasser intend to commit a trespass or even that he know that his act will constitute a trespass, [citation]. The actor may be innocent of moral fault, but there must be an intent to do the very act which results in the immediate damage. In other words,

trespass requires an intentional act. [Citation.] Applying this requirement to the case at bar, it is difficult to find the defendant's act in striking the pipe to be an actionable trespass. There is no proof that the defendant intended to strike the pipe and, in fact, it is clearly established to the contrary, for he did not know the existence or location of the line, nor is he charged with such knowledge for purposes of determining whether his action was intentional. Without an intentional act, the defendant's conduct cannot give rise to a trespass and, therefore, the plaintiff's cause of action based on the theory of trespass must fail." 109 N.Y.S.2d, l. c. 801. As in the New York case, the act of contractor in going onto the farm to terrace and in so operating the Caterpillar tractor as to strike the pipeline was voluntary. Unlike that case, there is evidence in this case which could form the basis of a finding that contractor and/or his employee had constructive knowledge of the existence and location of the pipeline from which a jury might conclude that the puncturing of the pipeline would to a substantial certainty have resulted from the ripping work in which contractor was engaged. Such knowledge, however, was not a conceded fact, but was contested, contractor and his employee denying that they had knowledge, actual or constructive, of the fact. Since there was evidence pro and con on the issue of knowledge it was an issue for the jury to determine, and trespass *vel non* was not a matter for the court to declare as a matter of law, either on contractor's or pipeline's motion for judgment.

◼ Count II of pipeline's counterclaim alleged that contractor, through his employee, had actual or constructive knowledge of the existence and location of the pipeline but negligently failed to take notice thereof and failed to take proper precautions to avoid interfering with the easement and intermeddling with the pipeline, and by reason of such negligence operated his machine so that a blade thereof came in contact with and pierced the pipeline, to the damage of pipeline. As in Count I, the knowledge of contractor and his employee was contested, indeed was the principal issue in the trial of Count II of pipeline's counterclaim, and it would have been error for the court to declare the question negligence *vel non* as a matter of law.

Accordingly, the court erred in granting pipeline's after-trial motion for a directed verdict on the issue of liability on Count I of the counterclaim, and the action of the court in denying contractor's motion for a directed verdict on the counterclaim must be sustained.

The next question is whether the court erred in entering its alternative order granting pipeline a new trial on grounds 14 through 19 of its motion for a new trial.

Assignments 15 through 19 attack given Instruction No. 6–A which submitted contractor's defense against pipeline's counterclaim:

"Instruction Number 6–A

"Your verdict must be for plaintiff on defendant's counterclaim, whether or not plaintiff was negligent, if you believe:

First, defendant failed to provide adequate warnings of the location of the pipe line, and

Second, defendant was thereby negligent, and

Third, such negligence of the defendant directly caused or directly contributed to cause any damage defendant may have sustained."

◼ Assignment No. 17 alleged error in giving No. 6–A on contributory negligence "because it contained no requirement that plaintiff did not know and by the exercise of ordinary care could not have known of the existence of the pipe line." This assignment must be sustained. Instruction No. 6–A is a defensive instruction by which

contractor sought to absolve himself from the results of his alleged negligence in rupturing the pipeline by submitting the contributory negligence of pipeline in failing to warn him or his employee of the location of the pipeline. Lack of knowledge on the part of contractor and his employee was the *sine qua non* of nonliability. The instruction, however, permitted a verdict in favor of contractor on this issue without requiring a finding that contractor and his employee did not have the requisite knowledge (the lack of which would necessitate a warning), and this "whether or not plaintiff was negligent." The only negligence on the part of plaintiff to which this last clause could have referred was that described in Instructions Nos. 4-A and 6, namely, negligence on the part of contractor or his employee in failing to avoid striking the pipeline when they knew or by using ordinary care should have known of the existence of the pipeline. Instruction No. 6-A thus authorized a verdict for contractor on pipeline's counterclaim on the basis of lack of the pertinent knowledge even though the jury might at the same time find that contractor or his employee had that knowledge. This conflict in the instructions justified and necessitated the alternative order granting pipeline a new trial of its counterclaim. Other alleged errors in Instruction No. 6-A may be reconsidered and any deficiencies rectified on a new trial.

■ Contractor claims that if a new trial is granted to one party it must be granted to both parties on all issues because the issues are so interrelated and interdependent that the trial of one necessarily involves the trial of the other. Contractor cites Portell v. Pevely Dairy Co., Mo.Sup., 388 S.W.2d 790, and Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, and cases cited, including Bramblett v. Harlow, Mo. App., 75 S.W.2d 626. These cases do not require the granting of a new trial on all issues in the situation before us. In the cases cited the prevailing party's error affected the trial of the losing party's case and the erring party was required to surrender his favorable verdict on the offsetting claim because the issues were intermixed, could not fairly be tried separately and there was the possibility of inconsistent verdicts. None of those situations obtains here. There was no prevailing party. Both claim and counterclaim resulted in a defendant's verdict in what is colloquially termed a "dogfall." The error requiring a new trial of the counterclaim was not an error which adversely affected the trial of the claim under the petition. Claimant, who wants his case retried if the counterclaim is retried, lost on the claim under his petition in a trial free of error. The error in the trial of the counterclaim was of claimant's own doing. To direct a retrial of the claim under the petition because of error in claimant's defensive instruction in the trial of the counterclaim would allow claimant to benefit from his own error. There is no perceptible reason why pipeline's counterclaim may not be fairly tried independently and separately from contractor's claim. One reason the cited cases required both claim and counterclaim to be retried together on remand was to avoid the possibility of inconsistent verdicts, but that possibility does not exist in the present situation. Whether pipeline prevails or loses on resubmission of its counterclaim the result in either event will not be inconsistent with the denial of recovery to contractor on his petition. Only if contractor had prevailed on his claim under his petition would the possibility of such an inconsistency have arisen.

Accordingly, the judgment on the issues raised by contractor's petition and pipeline's answer is affirmed, and the judgment on the issues raised by pipeline's counterclaim and contractor's reply is reversed and the cause is remanded for a new trial of the latter issues. The first judgment referred to is ordered held in abeyance until judgment is rendered on the latter issues, at which time final judgment on all issues and all counts shall be entered.

WELBORN and HIGGINS, CC., concur.

**PER CURIAM.**

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.