**GENERAL TELEPHONE COMPANY OF the SOUTHWEST, Appellant,**

v.

**BI–CO PAVERS, INC., Appellee.**

**No. 18347.**

Court of Civil Appeals of Texas, Dallas.

Sept. 5, 1974.

Rehearing Denied Oct. 3, 1974.

R. L. Middleton, Jr., Dallas, for appellant.

James K. Peden, III, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

GUITTARD, Justice.

In this suit by a telephone company against a paving contractor for severing a telephone cable buried in conduit under a public street, the jury found no negligence on the part of defendant contractor and also found that plaintiff's negligence contributed to the occurrence. On these findings the trial court rendered judgment for defendant, and plaintiff appeals on the ground that other findings of the jury establish a trespass, to which contributory negligence is no defense. We affirm on the ground that no trespass or other ground of liability has been established.

The findings which plaintiff asserts as establishing a trespass are that plaintiff did not give defendant permission to enter its conduit and that defendant cut the conduit in the right-of-way granted to plaintiff by franchise from the city. There was no evidence that defendant intended to cut the cable or intrude into the space where it was maintained, and no issue was submitted on this question.

Plaintiff contends that these findings establish defendant's liability for trespass un-

der Mountain States Tel. & Tel. Co. v. Vowell Construction Co., 161 Tex. 432, 341 S.W.2d 148 (1960). In that case the Supreme Court of Texas held that a paving contractor's act of severing a telephone cable lawfully in place under a street was a violation of a property right and, consequently, gave rise to a cause of action without proof of negligence or intent to interfere with the cable.

We conclude that the present record does not establish the kind of tort recognized in *Vowell* as a "trespass." If the "trespass" recognized in *Vowell* is interpreted as an intentional tort, we hold that no such tort is established because defendant did not intend to intrude into the space where the cable was maintained. If that "trespass" is interpreted more broadly to embrace the concept of strict liability, as plaintiff contended in oral argument, we still hold that no tort is established. Strict liability does not apply because plaintiff, unlike the telephone company in *Vowell*, had notice of the danger to its cable and a better opportunity than defendant to prevent the occurrence.

### Intentional Tort

■ In *Vowell* the contractor's employee intended to make a cut in the street down to a level below that at which he struck and severed the telephone cable. No similar intent appears here. Defendant's contract with the city required it to stabilize the soil by mixing it with lime down to a depth of six inches below the surface grade, and for that purpose defendant used a heavy machine known as a "pulvamixer," which crushed the conduit and severed the cable. Admittedly, the telephone conduit was more than six inches below the surface at the point of severance. Before the occurrence a city engineer had measured the depth of the conduit at a location within twenty feet of the point where the cable was later severed and had found it to be more than eleven inches below the surface. After the occur-

rence, the contractor's engineer found the conduit at the point of the severance to be more than four inches below the lime work. Thus the evidence, unlike that in *Vowell*, fails to show that defendant intended to intrude into the space where plaintiff was lawfully maintaining its cable.

■ Plaintiff insists that a trespass is established because operation of the "pulvamixer" was an intentional act which resulted in violation of plaintiff's property right. Even though defendant intended to operate the machine, its operation as intended would not necessarily have violated plaintiff's right. A trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act which violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit is such a violation. First City Nat'l Bank v. Japhet, 390 S.W.2d 70, 74 (Tex.Civ.App.—Houston 1965, writ dism'd); McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex.Civ.App. —Beaumont 1934, writ ref'd); Cover v. Phillips Pipe Line Co., 454 S.W.2d 507 (Mo.1970); Mountain States Tel. & Tel. Co. v. Horn Tower Construction Co., 147 Colo. 166, 363 P.2d 175 (1961); 1 F. Harper & F. James, The Law of Torts § 2.5 (1956). If the act intended would necessarily violate a property right, whether or not the actor knows it to be a violation, he is nevertheless liable, and that liability may extend to unintended consequences. 1 F. Harper & F. James, *supra* at 111; and *see* Schronk v. Gilliam, 380 S.W.2d 743, 746 (Tex.Civ.App.—Waco 1964, no writ); Carter v. Haynes, 269 S.W. 216 (Tex.Civ. App.—Austin 1925, writ dism'd). However, unless the intended act would violate a property right, the actor's liability for unintended consequences ordinarily depends upon proof of negligence. Parrot v. Wells Fargo & Co. (Nitro-Glycerine Case), 15 Wall. (82 U.S.) 524, 21 L.Ed. 206 (1873); First City Nat'l Bank v. Japhet, 390 S.W.2d 70, 74 (Tex.Civ.App.—

Houston 1965, writ dism'd); Mountain States Tel. & Tel. Co. v. Kelton, 79 Ariz. 126, 285 P.2d 168 (1955). Otherwise, the defense of contributory negligence could be avoided in any case of an intentional act with unintended consequences by treating the act as an intentional tort.

■ Since the present case contains no finding and no evidence that defendant's employee intended to operate the "pulva-mixer" at the depth where he severed the cable, it is not like the case of the innocent trespasser who intends to make excavations on certain land in the mistaken belief that he has a right to do so, and is liable without proof of negligence. *See* Whitehead v. Zeiller, 265 S.W.2d 689 (Tex.Civ.App.— Forth Worth 1954, no writ); Shell Petroleum Corp. v. Liberty Gravel & Sand Co., 128 S.W.2d 471 (Tex.Civ.App.—Beaumont 1939, no writ); Restatement (Second) of Torts § 164 (1965). It is more like the case of a motorist who intends to keep on the road and inadvertently runs over adjacent land. In such a case, liability depends on proof of negligence. First City Nat'l Bank v. Japhet, 390 S.W.2d 70 (Tex.Civ. App.—Houston 1965, writ dism'd); Smith v. Pate, 246 N.C. 63, 97 S.E.2d 457 (1957); Restatement (Second) of Torts § 166 (1965). Consequently we hold that no trespass, in the sense of an intentional tort is established.

### Strict Liability

We recognize that the scope of the *Vowell* decision may not be limited to the intentional tort theory above discussed. Although in *Vowell* Justice Norvell uses the term "trespass," he indicates doubt concerning propriety of that term by observing: "The particular appellation or classification to be given the particular act is not of controlling effect." 341 S.W.2d at 150. Since in *Vowell* the contractor did not know the exact position of the cable, and did not intend to make contact with it, the

"trespass" in that case does not fall within the concept of "trespass to personalty" as defined by such authorities as Restatement (Second) of Torts § 217, Comment b at 417 (1965); 1 F. Harper & F. James, The Law of Torts § 2.5 (1956); W. Prosser, Handbook of the Law of Torts 77 (1971); Comment, A Comparison of the Conduct Required in Trespass to Chattels and Negligence, 33 Rocky Mt.L.Rev. 323, 328 (1961). However, the tort recognized in *Vowell* may rest upon the broader concept that one who digs in a public street has a strict duty to avoid disturbing public utility lines buried in it and is liable for any damage to them caused by his digging, whether or not he actually intends to dig into the area where the lines are maintained. This concept is supported by policy considerations which seem to be the basis for New York Steam Co. v. Foundation Co., 195 N. Y. 43, 87 N.E. 765 (1909), one of the authorities cited in the *Vowell* opinion. Consequently, we must consider the extent of such strict liability and determine whether it applies in this case.

The *Vowell* opinion itself limits the tort recognized in that case to a situation in which the public utility company has no notice of the danger to its lines. Justice Norvell points out that in that case no request had been made to the telephone company to check its lines and lower them if necessary before paving operations were undertaken, and he adds:

> The owner of conduit lines lawfully in a street or alley can hardly be expected to know that their existing location is unsatisfactory in view of contemplated street surfacing or other improvements *unless notified to that effect.* [341 S. W.2d at 151, emphasis added.]

This limitation of the tort recognized in *Vowell* is confirmed by the later opinion of the Supreme Court in Pioneer Natural Gas Co. v. K & M Paving Co., 374 S.W.2d 214 (Tex.1963). There an earthmoving machine operated by a paving contractor was

destroyed by fire when it struck a natural-gas pipeline under a public road. In the contractor's suit for damages, the jury found negligence on the part of the pipeline owner and also found that the contractor was not negligent in operating the machine, even though the contractor could have found out the location of the line from the highway department and had not done so. Judgment for the contractor on these findings was affirmed by the intermediate court, and on writ of error the pipeline owner contended that it was not liable because the contractor was a trespasser under *Vowell*. In reversing and rendering judgment in favor of the owner, the Supreme Court did not reach the trespass issue, but observed that the question of constructive knowledge, or duty-to-know, in trespass to chattels is a field of law both difficult and unsettled. Instead of resolving that question, the court rested its decision on the ground that the contractor had not given the pipeline owner sufficient notice of the operation to cast on the owner a duty of care for the protection of lives and property. Justice Greenhill stated the governing principle as follows:

> We think it sound, in the light of the cases hereinafter discussed, to hold that at least where the activity is in an urban street or road, and where an unusual or extraordinary use of the surface is necessary to unearth the pipeline, and where there is no contract, statute, ordinance, or regulation governing the matter, the initial burden is upon the one who excavates or digs up the surface to avoid striking the line or to make reasonable inquiry as to the location of any lines which might be encountered. The duty of the pipeline operator under these circumstances arises, then, when it is requested to alter its lines or their use, when it is asked for information, or when it is otherwise put on such notice that it is required to take particular action to protect the lives or property of others. [374 S.W.2d 219].

Although *Pioneer* appears to be concerned with duties of reasonable care rather than duties giving rise to strict liability, its concept of the successive duties of contractor and owner may be even more pertinent when strict liability is asserted.[1] A strict duty, unlike a duty of ordinary care, cannot logically coexist with a duty on the part of the injured party to take action to avoid the same loss. For example, in a case where the owner of the line had notice of the danger from the contractor's work, it would be contradictory to award the contractor the damages to its equipment caused by the owner's breach of a duty to take protective action, and also to award the owner damages to its line on the theory of trespass or strict liability, to which the owner's breach of duty would be no defense.[2] Logic and policy both dictate that the notice which raises the owner's duty to take protective action should also terminate the contractor's strict duty to

---

1. In the above quotation the court states the "initial burden" resting on the contractor as being "to avoid striking the line or to make reasonable inquiry as to the location of any line that may be encountered." Although "reasonable inquiry" suggests a standard of ordinary care, and indicates that this "burden" might be discharged by a reasonable inquiry that fails to disclose presence of the line, that question was not presented for decision. Recognition of a more onerous duty than that of ordinary care is indicated by the court's holding that the "burden" existed notwithstanding the jury finding that the contractor was free of negligence, and also by the court's declining to adopt the contention of the pipeline owner that the contractor was guilty of contributory negligence as a matter of law. This avoidance of the usual negligence-liability analysis may be significant in view of the owner's contention that the contractor was guilty of a trespass under *Vowell*, and also in view of the authorities discussed in the opinion, some of which are not concerned primarily with negligence liability.

2. The *Pioneer* opinion discusses cases involving damages to the line as well as damages to the contractor's equipment and makes no suggestion that different duties should be recognized in these two types of cases.

avoid striking the line, although a duty of ordinary care may continue.

■ Thus we conclude from both *Vowell* and *Pioneer* that if the contractor has a strict duty to avoid striking a public utility line in the street, that duty continues only until the owner has had notice that protective action is required. In the present case the undisputed evidence shows that plaintiff telephone company had such a notice. It was fully advised concerning the city's plans, and had actually lowered its conduit in locations where it had determined that the work described in the plans would endanger its cables. Plaintiff's inspector was on the scene from time to time during the work to advise defendant's employees where the conduit was laid and to determine whether other sections of the line should be lowered. This evidence overcomes any prima-facie case of strict liability established by proof that defendant, without plaintiff's consent, cut plaintiff's cable lawfully maintained in the street.

■ The significance of notice to the owner of the line is that it gives the owner an opportunity to avoid the loss. Of course, that opportunity requires some period of time for action after receiving the notice. Here plaintiff had that opportunity and failed to use it, according to both the undisputed evidence recited above and the findings of the jury. The jury found that before the occurrence plaintiff actually knew the danger of damage to its conduit from defendant's work in the area where the damage occurred.[3] The jury further found that the occurrence was proximately caused by plaintiff's failure to take protective action in several respects: failure to determine the depth of the conduit at the point where the damage occurred, failure to advise defendant of the depth of the conduit at that point, failure to adequately supervise defendant's work at the time of the occurrence, failure to adequately supervise the relocation of the cable before the occurrence, and failure to lower the cable at the point of the occurrence. Plaintiff's failure in these respects was found to be negligence, but we regard contributory negligence as immaterial insofar as the suit is based on strict liability. Apart from contributory negligence, the verdict establishes that plaintiff had at least as good an opportunity as defendant to avoid the loss and failed to avail itself of that opportunity.

This concept of opportunity to avoid loss is basic to the theory of tort law. O. Holmes, The Common Law 95, 144 (1881). It applies whether the tort under consideration is classed as intentional, negligent, or in breach of a strict duty, and is also relevant to the defenses to each of these classes of torts.[4] A person who intends to

3. This issue was submitted as part of the defense of assumption of risk, and the jury declined to find that plaintiff fully appreciated the nature and extent of the danger to its cable. This negative finding, which would be material if trespass or negligence were established, is not controlling in a case based on strict liability, since, as we interpret *Pioneer*, notice itself relieved defendant of its "initial burden" and raised a duty on plaintiff inconsistent with continuation of a strict duty on the part of defendant.

4. Perhaps a better analysis would treat these classes as a "continuous spectrum" depending on the degree of probability of harm that may be presumed to be known to the actor. O. Holmes, *supra*, 146; Wigmore, Justice Holmes and The Law of Torts, 29 Harv.L. Rev. 601, 608 (1916) ; Comment, A Comparison of the Conduct Required in Trespass to Chattels and Negligence, 33 Rocky Mt.L.Rev. 323, 327 (1961). If so, the applicable principle of defense would be that the defendant is not liable if plaintiff had equal knowledge of the probability of the loss and equal opportunity to avoid it. Another formulation of this principle is that the test of liability is which party had the better opportunity to evaluate the risk of loss and the cost of avoiding it, and to act upon such a decision. Calabresi & Hirschoff, Toward a Test for Strict Liability in Torts, 81 Yale L.J. 1055, 1060 (1972).

For further discussion of defenses to strict liability, see 2 F. Harper & F. James, The

commit a wrongful act obviously has the best opportunity to avoid the ensuing loss by refraining from the act. He is liable for the loss, unless the injured party consented, and in that case it may be assumed that the injured party had an equal opportunity. A negligent tort-feasor can avoid the loss · by using ordinary foresight and care, and is liable unless the injured party could also have avoided it by using comparable foresight and care. One whose activites are accompanied by an extraordinary risk, such as a user of explosives, a keeper of dangerous animals, or a manufacturer of products which are dangerous if defective, has a better opportunity to avoid loss than a potential victim. Accordingly, he is subject to strict liability regardless of negligence or intention.[5] Such strict liability should not be imposed for the benefit of one who had an equal or better opportunity to avoid the loss and has not availed himself of that opportunity. More particularly, a contractor who digs in the public street has a better opportunity than the owner to prevent damage to utility lines buried there until the owner has had notice of the work to be done and an opportunity to take protective action. When that notice and opportunity is shown, as in this case, no basis for strict liability exists.

Since this record fails to establish either an intentional tort or a basis for strict liability on the part of defendant contractor, the trial court's judgment for defendant on the verdict was correct.

Affirmed.

Law of Torts § 14.5 (1956), and Epstein, Defenses and Subsequent Pleas in a System of Strict Liability, 3 J.Legal Studies 165 (1974), reprinted, American Bar Foundation (1974).

5. *See* Restatement of Torts §§ 507, 509, 519 (1938) ; Restatement (Second) of Torts § 402A (1965) ; 2 F. Harper & F. .James, The Law of Torts §§ 14.4, 14.6, 14.11, 28.27 (1956) ; O. Holmes, The Common Law 117 (1881) ; W. Prosser, Handbook of the Law of Torts §§ 77, 78, 99 (1971).

Of course, strict liability may rest also on other considerations, such as ability to bear the risk or pass it on. W. Prosser, *supra*, § 75 at 495. These considerations, however, are not relevant unless the actor had an opportunity to avoid the loss by discontinuing the activity or taking precautions. Holmes observes in the passage cited that in cases of strict liability, "as there is a limit to the nicety of inquiry which is possible in a trial, it may be considered that the safest way to secure care is to throw the risk upon the person who decides what precautions may be taken."