**Jesse NEWMAN, Appellant,**

v.

**TWIN CITY STATE BANK, et al., Respondents.**

**No. WD 33171.**

Missouri Court of Appeals, Western District.

March 29, 1983.

Bruce E. Strauss of Shockley, Reid & Koger, Kansas City, for appellant.

William L. Turner, John B. Gage II & Ralph E. Lewis, II, of Gage & Tucker, Kansas City, for respondents.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is an action for damages in multiple counts upon a replevin bond and for intentional tort. The trial court directed a verdict for the original defendant and third party defendant at the close of plaintiff's (Newman's) evidence. The judgment is affirmed.

Before setting forth the charged errors and the pertinent facts, the parties are identified. Appellant, Jessie Newman, was, at trial, the original plaintiff and is hereinafter referred to as Newman. Twin City State Bank, respondent, was the original defendant and hereinafter referred to as Twin City. Booth's Tow Service, Inc., respondent, at trial was impleaded as a third party defendant by Twin City and hereinafter is referred to as Booth.

On this appeal, Newman charges that the trial court erred in sustaining the motions of both respondents for a directed verdict at the close of his evidence because (1) his evidence showed a breach of the conditions of the replevin bond upon the failure of Twin City to prosecute the replevin action with effect, and (2) his evidence was sufficient to reveal a trespass against his personal property.

The record reveals that Newman executed (on February 16, 1978) an installment note payable to Twin City. Security for payment consisted of two motor vehicles owned by Newman. One vehicle was a 1966 Mark X Jaguar and the other was a 1973 Pontiac.

Newman defaulted in his payments. After a few months, Twin City filed a replevin action, under bond, in the Associate Circuit Division of the 16th Judicial Circuit, on January 20, 1979. An order of delivery in replevin was issued by the Associate Circuit Judge. This order directed the Court Administrator to deliver both vehicles to Twin City. At approximately 6:00 p.m. on January 24, 1979, a deputy from the office of the Court Administrator, along with the attorney for Twin City, appeared at Newman's residence. The replevin order was served on Newman. Newman was not fully cooperative. The tow service originally requested by Twin City did not appear and Booth was requested to tow the vehicles. The evidence reveals that the process of taking possession of the vehicles from Newman spanned some two to three hours. During this period, Newman, by phone, conversed with his attorney and refused to give over the keys to the vehicles. At one point, the deputy hinted at the possibility of ordering a "paddy wagon".

The vehicles were ultimately towed from Newman's garage. The evidence is controverted over the towing and all following events.

Newman testified that he was concerned over the towing procedures of the vehicle, particularly the Jaguar. He contended that the Jaguar was in "concourse condition" and had never "been wet by raindrop or snowflake." He further claimed that at the time of repossession, the Jaguar was worth $15,000. In addition, he claimed (at the time of repossession) that the Pontiac was worth $1,800. Newman further stated that he informed counsel for Twin City that the Jaguar should be stored and claimed that counsel informed him (Newman) it would be stored inside. Newman further claimed that he had a discussion with one of the two tow drivers and Twin City's counsel regarding the manner of towing the Jaguar. Newman stated that he advised the two the Jaguar should be towed with a sling. According to Newman, one of the two drivers stated he knew how to tow the Jaguar and towed the vehicle with a tow bar from the rear.

By agreement between the parties, counsel for Twin City was permitted to testify out of order. He stated that while at Newman's residence, he in no way attempted to advise the tow drivers on the manner of towing. He testified that he had no knowledge of towing procedures and felt he had no right to advise the tow driver in the matter.

Newman further testified that some three weeks following the repossession, he observed the two vehicles in the Booth Tow lot covered by snow. Newman contacted a representative of Twin City, and the two went to Booth's lot. The Jaguar was observed and Newman claimed that he pointed out rear bumper damage, the break in a rubber bushing and paint damage in the area of the rear bumper. The Jaguar was transferred to an inside garage in downtown Kansas City. Newman drove the Jaguar to the inside garage.

The replevin action was called up for disposition *four* times in the Associate Circuit Court. Negotiations between Newman (through his counsel) and Twin City (through its counsel) were in process. On three of the four court dates, Newman, through counsel, requested that the matter be continued. These continuances were granted. At no time did Newman present any claim for damages.

Ultimately, Newman entered into an agreement with a friend of his which provided that he (Newman) would sell the Jaguar to the friend for $5,000 and repurchase the Jaguar from the friend for $6,000 within 90 days. An amendment to this written agreement reduced the repurchase period from 90 days to 26 days. Newman secured the $5,000. He paid this sum (less $500 returned to him by Twin City) to Twin City in *full* satisfaction of the installment note, costs, and fees. Title to the Jaguar was transferred to Newman's friend. Newman never repurchased the Jaguar, and at the time of trial of the instant matter, did not own the Jaguar. Newman regained his Pontiac.

Newman testified that when he retrieved his Pontiac, it would not start and he discovered the alternator was missing. In addition, he claimed that the vehicle originally had 15-inch tires with only 8,000 miles on them, but when retrieved, these tires had been replaced by worn 14-inch tires. Newman testified that the value of the Pontiac, when repossessed, was $1,800, and when recovered, was $400. He further testified that the value of the Jaguar, when repos-

sessed, was $15,000, and when recovered, was $5,000. Newman testified that he did not know who caused the damage or how it was caused.

On June 8, 1979, Twin City dismissed the replevin suit with prejudice. On July 13, 1979, Newman filed the present action. On September 16, 1981, this cause was before the court, with a jury, for trial. At the close of Newman's evidence, the trial court directed a verdict for Twin City upon Newman's claim and for Booth on Twin City's claim against Booth. This appeal followed.

Newman did not plead any claim against Booth, nor did he allege that Booth was the agent of Twin City. Newman seeks recovery against Twin City and its surety on the replevin bond (St. Paul Fire and Marine Insurance Company) for damages to his vehicles.

On this appeal, Newman (under his point [1]), contends that he is entitled to pursue this subsequent claim for damage although he did not present any claim for damages in the replevin action.

Twin City defends upon the premise that Newman, at trial, failed to prove a breach of one or both of two requirements imposed upon a replevin plaintiff and its surety and hence is barred from proceeding with this action.

In replevin actions, a bond filed in support thereof must conform to Rule 99.06. That rule provides:

"Rule 99.06. Delivery Bond—Form of—Effect of Filing

The plaintiff shall file a sufficient bond, approved by the court, executed by the plaintiff as principal and one or more sufficient sureties *to the effect that they are bound to the defendant in double the value of the property for the prosecution of the action with effect and without delay, for the return of the property to the defendant, if return thereof be adjudged, and, in default of such delivery for the payment of all damages for injuries to the property thereafter, for the payment of all damages for the taking and detention thereof, and for all costs.*" (Emphasis added)

Stated in more simple language, the above rule requires a replevin plaintiff, subject to the court's approval, to post a bond binding the replevin plaintiff to double the property value to protect the replevin defendant in case of the occurrence of one of the following:

(a) the replevin plaintiff fails or refuses to prosecute the replevin action without delay and effect; and

(b) when redelivery of the property to the replevin defendant is ordered by the court and damage to the property has resulted.

There is no dispute between the parties that the replevin bond herein was in all respects proper and filed in conformity to the rule. There is no dispute that the bond was approved by the court. There is also no contention that redelivery was ever ordered by the court ( [b] above). The record does not reveal any redelivery order by this court.

Newman charges that Twin City failed to prosecute its replevin action without delay and with effect. From this posture, Newman thus concludes that he is entitled to pursue this subsequent claim for damages. Newman reaches the final challenge to the trial court's ruling by further arguing that his evidence made a case submissible to the jury.

Before addressing Newman's contentions under his point (1), it is noted that our courts have defined "prosecution with effect." That term was addressed in *Spickard v. Continental Casualty Company,* 288 Mo.App. 233, 64 S.W.2d 734, 736 (1933) wherein the court declared, "The provision that the plaintiff shall prosecute the action with effect means it will prosecute it successfully." See also *Berghoff v. Heckwolf,* 26 Mo. 511, 513 (1858).

As noted ( [a] above), there are two elements, i.e., "without delay and with effect." There is no real question upon this record that Twin City prosecuted its replevin action without delay. Once filed, the record shows that Twin City was prepared and stood ready to proceed with the replevin proceedings, but at the request of and for the accommodation of Newman, the replevin proceedings were continued. The result is, of course, that the element of delay cannot validly be assaulted by Newman. This narrows the focus on the matter as to whether Twin City prosecuted its replevin claim with effect.

Newman contends that since Twin City dismissed the replevin action without his consent, there was no determination of the damages and thus, he is at liberty to pursue this present action. It is noted again that Newman failed to present or allege any claim for damages in the replevin action. Newman cites *R.W. Wilson Motor Co. v. Hoover,* 222 Mo.App. 570, 293 S.W. 61 (1927); *Morrison v. Yancey,* 23 Mo.App. 670 (1886); and *Glenn v. Gibbs,* 230 Mo.App. 409, 92 S.W.2d 947, 949 (1936).

*R.W. Wilson* is clearly distinguishable, for it dealt with a redelivery order of the property (by the court) to the replevin defendant and refusal of replevin plaintiff to furnish an additional bond.

*Morrison* is not applicable because it involved the dismissal of the replevin action *by the court* upon plaintiff's failure to furnish an additional bond. It should be noted, however, that *Morrison* also restates the prevailing rule regarding a subsequent action for damages by a replevin defendant. The court in *Morrison* at 670 stated, *"The defendant in a replevin suit, who fails to have his damages assessed in that suit, can not maintain an action against the plaintiff and his sureties on the replevin bond for damages. White v. VanHouten,* 51 Mo. 577; *Hohenthals v. Watson,* 28 Mo. 360; *Farley v. Bryant,* 34 Mo. 512; *Boutell v. Warne,* 62 Mo. 350; *Dougherty v. Cooper,* 77 Mo. [528] 535." (emphasis added)

*Glenn* addressed the sole question of the propriety of the circuit court's action in dismissing the appeal by the replevin defendant from the judgment of the justice of the peace. In *Glenn,* on the date of judgment for replevin plaintiff, but subsequent to that judgment, replevin defendant appeared and requested a jury trial on the replevin issues. The request was denied

and an appeal to the circuit court followed. The circuit court dismissed the appeal and that action was reversed. *Glenn* is distinguishable on its facts. It should be noted that in *Glenn, Morrison* and *R.W. Wilson, supra,* unlike the present case, the replevin plaintiff continued in possession of the property. This feature also distinguishes those authorities from the instant proceedings.

■ This entire issue turns upon the answer to the question of whether Twin City failed to prosecute its replevin claim with effect. As noted above, there is no real issue as to delay. Newman argues, by its dismissal of the replevin action, that Twin City did not prosecute its replevin claim with effect. Newman's argument equates the dismissal with a failure to have prosecuted the replevin claim without success. Stated another way, Newman argues that "the effect of the dismissal with prejudice filed in the original replevin suit is to hold that the plaintiff, Twin City Bank, has suffered an adverse result ..." Following this contention, Newman cites *Fenton v. Thompson,* 352 Mo. 199, 176 S.W.2d 456, 460 (Mo.1943), which contains the following expression:

> "Respondent insists that 'in our procedure the words "with prejudice" do not exist' and that there is no decision of our courts defining the term. We think the term 'with prejudice' has a well-recognized legal import; 'it is the converse of the term "without prejudice" and is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff.' 45 Words and Phrases, Permanent Edition, p. 455. See *Long v. Long,* 141 Mo. 352, 371, 44 S.W. 341."

It is to be noted that the dismissal in *Fenton* occurred *after* submission of the cause to a jury. The above quotation finds no application to the replevin action between the parties herein, nor does it apply to the issue as to whether Twin City prosecuted its replevin claim with effect under the facts and circumstances of the instant case.

The question properly to be asked and answered in the instant case is: What effect did Twin City hope or endeavor to achieve by its replevin action? When that question is answered, a determination of whether that effect was achieved is derived. It is obvious that Twin City sought recovery of the monies due under the installment loan it had with Newman, plus its costs in prosecution of the replevin. Twin City elected, as it had the right to do, to seek this recovery by taking possession of the security, i.e., the two vehicles, and after judgment realizing partial or complete recovery of its monies from execution upon the property. Did Twin City achieve the effect it sought? The evidence clearly establishes that it did. As noted above, pending the move by replevin against the property, Newman interceded with payment of his indebtedness, plus costs, due Twin City. With that payment, Twin City had achieved the "ultimate effect" it could ever have hoped to achieve. It had been paid in full and there was no further success to be achieved by Twin City. Keeping in mind the rule in *Spickard* that "[t]he provision that the plaintiff shall prosecute the action with effect means it will prosecute it successfully", this is precisely what the record reveals was done by Twin City. After Twin City had prosecuted its replevin claim successfully, it dismissed its replevin action and Newman realized possession of his Pontiac plus the transfer, by title and possession, of the Jaguar in conformity to his agreement with his friend. The dismissal did not occur until some two weeks after the property had been relinquished by Twin City and during that time, no claim of damages was ever submitted in the replevin action.

There is nothing upon this record to show that Newman was ever denied opportunity to present his claim for damages in the replevin suit by any act or omission by Twin City. The converse is clearly shown in that Newman at no time ever presented any claim for damages. The dismissal entered was not premised upon a compromise or settlement of Twin City's claim, but was

the termination of pending litigation after complete success of its action on replevin. See Rule 67.03. Aside from some practical evidentiary problems faced by Newman (noted infra under his point 2), there is nothing upon this record to conclude that Newman's claim for damages was not subject to the general rule and that he was required to present that claim in the replevin action or be barred from the subsequent presentment thereof. *Morrison, supra.* In addition and upon this record, it cannot be concluded that Twin City failed or refused to prosecute its replevin action without effect. *Spickard, supra.*

The trial court did not err in entering a directed verdict for Twin City and Booth upon Newman's claim for damages under the replevin bond. There is no merit to Newman's point (1) and it is ruled against him.

Under point (2), Newman contends that his evidence was sufficient to prove his claim of trespass against his personal property.

Under Counts II and III of his petition, Newman sought damages to his two motor vehicles allegedly caused or as a result of the vehicles' being in the possession of Twin City. Newman's contention under this point (2) is premised upon his conclusion that he was possessed of the right to proceed with the instant proceedings. This is an incorrect conclusion as noted above. Newman failed or refused to seek any assessment of his alleged damages in the replevin action. In order for his claim of damages to be permitted in subsequent proceedings, Newman bore the burden of proving that Twin City prevented him from seeking or having his damages assessed in the replevin action. The record fails to establish any act or omission by Twin City which caused or permitted such prevention. Newman is bound by the rule in *Morrison.*

■ As a concluding note, it needs to be mentioned that Newman, by his own evidence, failed to prove a present interest in the Jaguar. In addition, Newman testified that he did not know who caused the damage, or how and when it was caused. His claim asserted that the damage arose after he lost possession but proceeded no further. Newman pleaded and testified to an intentional tort, to wit, a trespass against his motor vehicles by Twin City. There is no evidence upon this record to prove the claimed intentional tort. The pleadings reveal that Newman did not file this action against Booth, nor did the pleadings allege a master/servant or agency relationship between Twin City and Booth. The evidence herein, as sparse as it is, tends to establish that Booth was an independent contractor and not the agent of Twin City. There was no evidence of control or other elements between Twin City and Booth revealing an agency relationship.

■ Agency is normally a fact question which must be shown by substantial evidence by the plaintiff. *Gardner v. Simmons,* 370 S.W.2d 359 (Mo.1963) and *DeMariano v. St. Louis Public Service Co.,* 340 S.W.2d 735, 740 (Mo.1960). However, as in the instant case, where Newman as plaintiff and by his evidence submitted no evidence upon the question of agency, he did not plead agency, and the trial court was left with the only reasonable conclusion that no agency existed, the matter then becomes a question of law determinable by the court. *Weinbauer v. Berberich,* 610 S.W.2d 674, 677 (Mo.App.1980). Newman's evidence further failed to establish a required element of the intentional tort of trespass, to wit, intent. That this element and the proof of it are necessary, see *Cover v. Phillips Pipe Line Company,* 454 S.W.2d 507, 512 (Mo.1970).

Newman's point (2) is found to be without merit and fails for two reasons. First, Newman was barred by the rule in *Morrison* in that he was required to have his damages assessed in the replevin action unless by some act or omission by Twin City, he was prevented from presenting his claim for damages. There is nothing upon this record that brings Newman's claim within an exception to the *Morrison* rule. Secondly, Newman's evidence, giving that evidence the accordance due since the trial court directed a verdict after submission of

that evidence, failed to establish how and by whom the damage alleged was caused and that said damage resulted from an intentional act or omission. Under Newman's evidence, there was no fact issue for the jury to decide.

Point (2) is ruled against Newman.

The judgment is in all respects affirmed.

All concur.